[Civ. No. 336. Fourth Appellate District.—April 13, 1931.]

JOSEPHINE TYNER, Respondent, v. RUDOLPH AXT, Appellant.

Wakefield & Hansen, William C. Crossland and Chester O. Hansen for Appellant.

David E. Peckinpah and Bert M. Green for Respondent.

LAMBERSON, J., *pro tem.*—The plaintiff, who is the respondent, and a resident of Hanford, in Kings County, was a passenger on the fifteenth day of February, 1929, in an automobile operated by her son, Homer C. Tyner, and in a collision, which occurred in the neighborhood of Sanger, in Fresno County, with a car driven by defendant and appellant, suffered severe injuries. She was thrown out of the automobile, rendered unconscious for a short time, sustained a lacerated wound on her forehead, fractures of both arms near the wrists, one of them a comminuted fracture, which resulted in some deformity as well as weakness, an injury to the extensor muscles of a ligament in the left leg, besides

numerous and painful bruises about her body. She was sixty years of age at the time of the accident. Upon the suggestion of a stranger, who came to the scene of the accident shortly thereafter, she was taken to the hospital of a Dr. L. P. Fleming at Sanger. Upon her arrival there she was very much excited and remained in a highly nervous condition during several weeks following. She carried splints on her arms for a period of seven weeks.

On the eighteenth day of February a man named W. O. Reed, who was an adjuster for the Union Automobile Insurance Company, which had previously issued a policy of public liability insurance to appellant, called at the hospital with one Dr. E. L. Bennett, who was also representing the insurance company, and who went to Sanger at the request of Reed for the purpose of examining Mrs. Tyner. Reed's visit was not made at the request of the respondent, but was ostensibly for the purpose of learning the extent of her injuries and determining what the hospital and surgical expenses would be. During the interview and the transaction which occurred at the hospital and which lasted about thirty minutes, the respondent was sitting in an arm-chair because, as she expressed it, her arms and back hurt and when she would lie down she could not get her breath very well, and suffered so when lying down that she had to be propped up.

The visiting surgeon examined Mrs. Tyner and the X-ray photographs which had been taken and discussed the case with Dr. Fleming. Reed testified upon cross-examination that his object in going there was to find out how much the hospital and doctor bills were going to be. In the course of the conversation which followed, and in which a son and another relative of Mrs. Tyner joined, the amount of such bills was discussed and Dr. Fleming stated that he would perform all services in the case, including hospital care and nursing while she was in the hospital, and take care of her as long as she needed his services, for the sum of $150. Reed thereupon prepared and delivered to Dr. Fleming a draft for the sum of $150, payable to the order of Mrs. Tyner and Dr. Fleming. The check or draft had printed upon its face, among other things, the following: "The endorsement of this draft constitutes a full and complete release and receipt in full settlement of the above claim or

account" and on the reverse side there was printed the following language: "If payee is not the assured the endorsement of this draft constitutes a release and receipt in full settlement. of all claims against the Union Automobile Insurance Company, assured or any other party on account of claim or accident referred to on face hereof." The draft was indorsed by Mrs. Tyner, who made her mark, and by Dr. Fleming, who retained the draft in his possession and received the proceeds thereof. Nothing was paid to Mrs. Tyner. At the same time Reed prepared and presented to Mrs. Tyner an instrument which read as follows:

"Release of Claim. For and in consideration of One Hundred Fifty and no/100 Dollars ($150.00) to me in hand paid by Union Automobile Insurance Company I hereby release and forever discharge the Union Automobile Insurance Company and Rudolph Axt from any and all claims by me on account of injuries sustained by me or my property in an accident on Feby 15th, 1929 at Jensen & McCall Avenues.

"Witness my mark made this 18th day of February, 1929.

"JOSEPHINE TYNER,
her
X
mark.

"Mrs. Josephine Tyner's signature was made by me and she made her mark in my presense.

"E. L. BENNETT, M. D."

"Witness J. T. THORNTON."

Dr. Bennett testified that at the time the instrument was signed by Mrs. Tyner her hands were in splints, and he had to sign the instrument for her. He placed the pencil between her fingers and in that way she succeeded in making her mark. He also stated that he read the instrument to her and that she said she understood it. There is no showing in the record that at the time of the visit of Reed and Bennett to the hospital Mrs. Tyner realized that there was a claim on her part against the insurance company or a disputed claim between her and the appellant, nor was there any showing that the full nature of any claim that she might have was disclosed to her by any person present.

On the same day respondent left the hospital and went to the home of a relative. About March 7th she called at Dr. Bennett's office in Fresno, apparently at the request of

the agent of the insurance company, was there examined and was advised by Dr. Bennett to go on with the treatment that Dr. Fleming was giving her.

By his answer the appellant pleaded the affirmative defense that as a result of the injuries sustained by plaintiff and respondent the plaintiff had a disputed claim against the defendant for damages and that on or about the eighteenth day of February, 1929, at the request of the plaintiff, the defendant paid to plaintiff the sum of $150 in full settlement of all claims against the defendant by reason of and on account of said disputed claim for damages and that on said day the plaintiff, in consideration of the payment of said sum by the defendant, released and forever discharged the defendant from all claims which the plaintiff had against the defendant for the injuries and damage sustained by plaintiff by reason of the automobile accident described in plaintiff's complaint. ■ At the trial of the case the respondent testified that she understood the settlement was only for hospital and doctor bills, that she did not understand that it was intended to effect a general release of the defendant. The evidence is conflicting upon that point and there were submitted to the jury full and proper instructions upon the issue raised by the appellant that the release signed by respondent was in full settlement of all claims and operated as a release of all such claims, and we are not free to disturb the verdict of the jury which impliedly found that the contentions of the respondent were proven by the preponderance of the evidence. From a judgment of the court after verdict by the jury for the sum of $5,000 in favor of respondent the appellant is taking this appeal and the only point pressed upon the appeal by the appellant is that raised by the affirmative defense set forth in appellant's answer.

It is contended by respondent in support of the verdict that at the time the draft and release were presented to respondent and she was requested to sign them, she lacked the capacity of understanding or comprehending the full import of the terms of her indorsement and of the release, and also that the transaction as carried on was intended and fitted to deceive, and did deceive the respondent as to the true nature of the release and the full scope of its terms.

■ The rule applicable to this class of cases has been stated in the case of *Smith* v. *Occidental Steamship Co.,* 99 Cal. 462 [34 Pac. 84, 86], wherein it was said:

"The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it."

In the case of *Edmunds* v. *Southern Pac. Co.,* 18 Cal. App. 532 [123 Pac. 811], the plaintiff, a mail clerk, was severely scalded in a railway accident and was taken to a hospital of the defendant where he was kept for about eighteen days and then to a hospital in the city of Los Angeles. About four days after his arrival in Los Angeles a claim agent of the defendant approached him and effected a settlement of his claim for the sum of $1250. A release was signed by the plaintiff and the plaintiff testified that when he signed the same he did not know what he was doing and did not know its contents until a later date. There was evidence to the effect that the claim agent made certain representations to plaintiff concerning his condition and ability to return to work within a short time. In sustaining a verdict in favor of plaintiff the court said at page 534:

"Appellant's principal contention is that no actual fraud was shown in the matter of the settlement, and that it does not appear that plaintiff was in such mental condition at the time of the settlement as to render him incompetent to act; and, further, that the amount paid was equal to the damages sustained. The jury having before it the witnesses, and having heard all of the evidence in the case, determined these matters adversely to appellant, and there being testimony in the record ample to sustain such verdict, it is not the province of an appellate court to review or weigh the evidence in a determination as to its weight or character. The suggestions of the claim agent and his statements to a man in the weak physical condition of plaintiff were acts

fitted to deceive, and under section 1572, Civil Code, amounted to actual fraud. In addition to this, a careful perusal of the transcript leaves little room for doubt that this man upon the date of this attempted settlement was unfitted to enter into or consummate any business deal or arrangement. His mental and physical condition were such that it cannot be said that two minds met in the contract of release, and the jury very properly so determined. The question of sanity or insanity in the abstract is not involved in matters of this kind. The question for the jury was whether or not at the time of the settlement plaintiff was so weak mentally and physically that he did not know and understand what he was doing. The court gave instructions to the jury as favorable to defendant as could be asked, and under these instructions the verdict of the jury must be accepted as a final determination of the matters at issue.'' (See, also, *Meyer* v. *Haas,* 126 Cal. 560 [58 Pac. 1042]; *Mairo* v. *Yellow Cab Co.,* 208 Cal. 350 [280 Pac. 66].)

In the case of *Romano* v. *Seibt,* 95 Cal. App. 586 [272 Pac. 265], the court held that in a case where one party to an agreement had inserted a clause therein, contrary to the agreement of the parties and had concealed the fact that it was contained in the agreement, the other party thereto might avoid such provision, notwithstanding that he might have discovered it at the time the contract was executed had he exercised a higher degree of diligence, and the mere failure of the party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent its reformation at the instance of the party who executes it thus carelessly.

No point has been made that the compensation named in the release was adequate. The testimony was to the effect that the respondent suffered permanent injuries and as a consequence thereof had not been able to do the work which she had formerly done in order to support herself. Considerable stress has been laid by the appellant upon the fact that the respondent before signing the release called upon her physician for advice. Although he should have occupied a confidential relation at the time, the respondent's physician was a stranger to her three days before, and it appears in the testimony that some time before the signing

of the release he had been approached by the claim adjuster for the insurance company with which the appellant was insured, who told the physician that he would pay his bill if the physician could make a settlement with respondent, and that the physician would be taken care of. The physician expressed to the respondent the opinion that if she could get her expenses paid it would be a good thing. The record discloses that the testimony of the physician was grudgingly given and his testimony and that of other witnesses indicates very strongly that during the transaction the physician was much more interested in having his own compensation secured than in any other matter and as he expressed it, he did not know what rights the respondent had outside of the payment of the medical and hospital bills and did not know whether there was any other money due her.

We have carefully reviewed the testimony and while there is a conflict therein, the jury had the issues properly submitted to them and their conclusions as to the inferences to be drawn from the evidence cannot be disturbed (*Smith* v. *Occidental Steamship Co., supra; Skaggs* v. *Wiley,* 108 Cal. App. 429 [292 Pac. 132]). The agents of the insurance carrier sought the interview with respondent and their importunities resulted in the execution of the release and the indorsement of the draft. Their visit to her within such a short time after the accident was an intrusion and an imposition upon her right to have her own counsel and to be independently advised in due course of time. Courts have inveighed against similar practices for many years and in many decisions. Transactions of this nature are subject to the closest scrutiny and when revealed as an imposition upon the rights of the injured person, are to be severely condemned (*Winstanley* v. *Ackerman,* 110 Cal. App. 641 [294 Pac. 449]). It would tax the credulity of any jury, as well as that of any court, to be asked to believe that a woman of sixty years of age, suffering from nervous shock and the bodily injuries which have been heretofore described and laboring under the disabilities which beset her at the time she signed the purported release, was capable of giving to a business transaction the same calm judgment that she might have been able to give to it under normal circumstances, or that she was negligent in not giving to the situation, hastily pressed upon her by the agents of the defend-

ant, the serious care that it should have been given under ordinary conditions. The solemnity of a contract entered into under such circumstances is to be seriously questioned. The surroundings indicate that neither her physician nor the persons acting on behalf of the appellant and the insurance company informed the respondent as to the full effect of the execution of the release or the meaning thereof, and the verdict of the jury, under the authorities hereinbefore cited, finds sufficient support in the evidence to sustain it.

The objection has been raised by appellant that respondent, in order to maintain this action should have offered to restore to appellant the sum paid at the time of signing the release. This objection was raised in the case of *Meyer* v. *Haas, supra,* where a similar point was made; and in regard to it the court said:

"That portion of the contract, therefore, purporting to release and satisfy the claim upon which the action is based is, on the findings of the jury, absolutely void for the reason that the mind of plaintiff never consented to any such a release, and the plaintiff should be bound only to the release and satisfaction of his claim for loss of time. This view of the case makes it clearly distinguishable from most of the cases cited by appellant. In those cases generally the parties sought to avoid or rescind contracts, the nature and contents of which they understood correctly, but they had been led to execute them by fraud or deception as to something other than the contents of the contract; and in such a case the contract would not be void but only voidable, and the rule requiring a return of everything received on the faith of the contract before it could be rescinded or avoided would apply; but this rule as to a return of everything received does not apply where a party is tricked or deceived into signing a contract different in its terms and objects from the contract which he has made and which he understands that he is executing. The contract under such circumstances will be held to be what the maker of it intended it should be, and not what it was made to appear to be by the deception practiced. The twenty-five dollars paid plaintiff may, therefore, properly be said to have been received in payment for the loss of time during his illness, and not in satisfaction of anything that his mind never consented that it should satisfy. The claim sued upon does not

include this loss of time, and the court instructed the jury that they could find nothing against defendants for loss of time. No offer to return the money was necessary, for the reason that the plaintiff in this case 'is not attempting to avoid a contract which he has made, but is showing that he did not make the contract which he apparently made'." (See, also, *Bard* v. *Pacific Elec. Ry. Co.,* 39 Cal. App. 512 [179 Pac. 449] ; *McElhaney* v. *W. E. Moyer & Co.,* 101 Cal. App. 53 [281 Pac. 87].)

The plaintiff in the instant case did not ask for any damages on account of medical attention or hospital care and made no attempt to prove such damage.

For the reasons hereinbefore stated the judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 6, 1931.