**PACIFIC GREYHOUND LINES v. ZANE et al.**

No. 11194.

Circuit Court of Appeals, Ninth Circuit.

Feb. 28, 1947.

Rehearing Denied April 8, 1947.

Baker and Whitney, Alexander B. Baker, and Harold E. Whitney, all of Phœnix, Ariz., for appellant.

Terrence A. Carson, Stahl & Murphy, Floyd M. Stahl, and John A. Murphy, all of Phœnix, Ariz., for appellee.

Before MATHEWS, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a final judgment of the district court. Appellant's motion for judgment n.o.v. and for a directed verdict and alternative motion for a new trial were denied.

Appellant's answer was a general denial which put appellees on proof of all of the allegations of their complaint. It further asserted that the release referred to below was a complete bar to appellees' action.

Zoa H. Zane, (then 23 years of age and in good health) a citizen of Arizona was injured near Indió, California while riding as a pay passenger on a bus owned and operated by appellant, a citizen of California. She was immediately taken to a nearby hospital operated by one Dr. Blackman where it was found necessary to immediately amputate her right leg at a point below the knee. The necessity for the operation and the liability of appellant for the injury are not issues on this appeal. There was evidence from which the jury could have found: That while Zoa H. Zane was in the hospital, one Cameron, who was a claim agent of appellant called upon her to discuss the matter of a settlement of her claim for personal injuries; that Blackman and Cameron falsely stated and represented to her that her sole and only injury was the loss of her lower right leg and that she had suffered no other or further injury; that Cameron advised her that Blackman was appellant's doctor, that he was a good and capable doctor with a high decree of medical skill, and that she could depend and safely rely upon whatever Blackman might tell her in regard to her injuries and condition; that both of these men acted in this matter as agents of appellant, and that as a result of these false representations, appellees were led to sign and deliver a certain "release" to

appellant; that while all of said statements and representations of Blackman and Cameron were false, said statements resulted in entirely deceiving her as to the nature and extent of her injuries; that at and during this period she did not have or retain the services of a doctor or a lawyer because she relied implicitly upon what was told her by Blackman and Cameron respecting her injuries; that some time after her discharge from the hospital, she discovered that in the said bus accident she had also suffered a severe fracture of her right femur, which fact Blackman and Cameron failed to disclose to her and wilfully and deliberately hid from her by said false and misleading representations.

That about three weeks prior to the actual signing of said release by appellees, Cameron left with Zoa H. Zane, for her inspection at the hospital, a printed form of release[1] to be signed if and when a settlement was agreed upon; that the printed form was in letters and figures exactly as indicated in footnote 1, save and except that the printed form so left with Zoa H. Zane contained certain words which had been added thereto and written into the release form in ink, that is, interpolated into the text of the printed form; that these added words were "Loss of right foot and lower leg"; that this qualifying phrase was written into the printed form of release at a place immediately after the printed words "resulting in", which latter words appear near the end of the first paragraph of the printed form; that the understanding of appellees was that this limiting and qualifying phrase had been inserted in the printed form of release to indicate the exact nature and extent of the injury for which appellees were to be compensated in the pending settlement; that appellees would not have later signed the release in the form appearing in footnote 1 had they known at the time of signing it that Zoa H. Zane had also suffered the additional femur injury in the bus accident.

That immediately before the release was signed by appellees, Cameron came to the hospital room of Zoa H. Zane and, ostensibly for the purpose of examining it, requested permission to take from the room the form of release which she had been holding; that he returned in a few minutes, bringing with him what she then thought

---

[1] "Release in Full
"IPGL-2251-B

"Received of Pacific Greyhound Lines the sum of Fifteen Thousand nine hundred sixty-seven and 00/100 Dollars ($15,967.-00) in consideration of which sum we hereby release and discharge Pacific Greyhound Lines of and from any and all claims and demands which we now have or may hereafter have, on account of or arising out of an accident which occurred on or about the 11 day of December, 1942, at Point on U.S. Highway #99, near Indio, California, resulting in personal injury and property damage.

"It is understood and agreed that this release extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, and all rights under Section 1542 of the Civil Code of California are hereby expressly waived.

"It is further understood and agreed that the payment of said sum is not, and is not to be construed as, an admission on the part of said payors of any liability whatsoever in consequence of said accident.

"Dated at Indio, Calif., this 19 day of February, 1943.
"Zoa Zane (L.S.)

"Jack Zane (L.S.)
"M. Cameron.
"Witness.
"Alpha R. Marcum,
"Witness.

"This release should not be signed unless read by or read to the person signing same.
"State of
"County of—ss.
"On the ...... day of ......, 19..,
before me personally appeared ........
to me known and known to me to be the same person mentioned and described in and who executed the above instrument and ...... acknowledged to me that ...... executed the same.
...............
"Notary Public.
"Section 1542 of the Civil Code referred to in the above release reads as follows:
" '1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.'
"Form 71008C 15M 1041 (S&C)"

was the same form of release she had just surrendered to him; that while out of the room, Cameron deliberately substituted another form of release for the one he had taken from her room, the substituted release being the same printed form of release, but one not containing the interpolated qualifying phrase "Loss of right foot and lower leg"; that this substitution of forms of release was not made known to Zoa H. Zane, who thereupon joined with her husband in signing the release, fully believing that it was the form containing the said qualifying phrase; that this deception caused them to sign a release which did not contain the said phrase which they desired for their protection and believed to be in the release; that procuring appellees to thus sign the release was a willful, actual and deliberate fraud on appellees; and that appellees would not have signed the release had they known it did not contain the ink interlineation of the phrase mentioned.

Below and here, the position of appellees was and is that the facts were as outlined above; that as a result thereof, the release they signed was not a bar to their action, due to the fraud practiced on them, which nullified the release and destroyed its purported effect; and that they may recover in this action for the added and undisclosed femur injury.

From the above summary and from an inspection of appellees' complaint, certain matters are made abundantly clear. Appellees based their right of recovery and their right to avoid the purported effect of the said release upon a showing at the trial of *actual fraud* practiced by appellant's agents. In sweeping terms their complaint charged that *"all of the statements and representations"* made to them by the said two agents of appellant *"were wholly false and untrue, and either were made by said Doctor and said claim agent,* who then and there were the agents of the defendant, *knowing the same to be false and untrue, or were made recklessly and without regard as to their truth or falsity, and with a full means of knowledge of their falsity"*; [emphasis supplied] that Dr. Blackman, on many occasions, *"falsely stated and represented".* The same specific

charge of actual fraud is made against Cameron.

There can be no doubt that both pleadings and proof of appellees made the existence or non-existence of actual and intentional fraud the paramount and decisive issue in this case. It is also clear that appellees relied on the charges and proof of actual fraud to void the release.

This view of appellees' theory of the case finds support in the instructions given by the court. In these instructions it is obvious that the court was of the view that the right of appellees to avoid the purported effect of the release and to have a verdict at the hands of the jury rested, in the last analysis, upon convincing proof of acts on the part of agents of appellant amounting to actual fraud upon appellees. This is indicated by the following instructions given to the jury:

"You are instructed that the plaintiffs in their complaint, among other things, charge that the written release in evidence was executed by the plaintiffs by reason of certain intentional false and fraudulent representations or concealment by the defendant or its agents. You are further instructed that the following elements are necessary to constitute intentional fraud on the part of any person:

"One: A representation; two: its falsity; three: its materiality; four: the speaker's knowledge of its falsity or ignorance of its truth; five: his intent that it should be acted upon by the person and in the manner reasonably contemplated; six: the hearer's ignorance of its falsity; seven: his reliance on its truth; eight: his right to rely thereon; nine: his consequent and proximate injury.

"It is necessary, of course, that plaintiffs should prove all of these essentials, as to any claim of intentional fraud. The nature and extent of the proof required depends to a great deal upon the relationships existing between defendant and plaintiffs. If they were dealing at arm's length, a greater degree of proof is required than if a confidential relationship existed between them.

"You are instructed that fraud on the part of any person is never presumed. It

must be established by clear, convincing and satisfactory evidence. You can not find fraud to exist on a mere suspicion as to the possibility thereof.

"You are instructed that the plaintiffs in this case contend that they were induced to execute the release in question by reason of false representations made to them that the plaintiff, Zoa Zane, had suffered no fractures from the bus accident except the fractures for which she was treated at the Indio Hospital. They further contend that such representations were false in that the plaintiff, Zoa Zane, in said bus accident had sustained a fracture of the femur of her right hip in addition to the fractures treated at the hospital.

"You are instructed that if you find from a preponderance of the evidence that the claim agent of the defendant, prior to the signing by the plaintiffs of the release relied on by the defendant, had left with the plaintiff, Zoa H. Zane, a form of release in which the consideration was stated to be $14,500.00 and in which the accident was stated to have resulted in the loss of said plaintiff's right foot and lower leg, and if you further find from the evidence that said plaintiff was led by said claim agent to believe that the release which she was signing and which she signed was the form of release that said claim agent had left with said plaintiff and that as a result said plaintiff signed said release introduced in evidence, then said release is no defense in this suit *and your verdict should be for the plaintiffs* for such damages as you may find the plaintiffs have sustained by reason of and as a result of the injury to the right femur or thigh bone of the plaintiff, Zoa H. Zane, if you further find from a preponderance of the evidence that the accident was caused by the negligence of the defendant and that such negligence was the proximate cause of said injury." [emphasis supplied]

Instructions of the foregoing character leave no doubt that the trial court was clearly of the view that appellees had undertaken to rest their case upon the theory and proof that actual and intentional fraud had been practiced upon them which finally resulted in the execution of the release relied upon by appellant.

We now consider appellant's contentions regarding the fraud issue. Appellant assigns error on the giving of an instruction (No. 2) requested by appellees, which reads as follows:

"You are instructed, gentlemen of the jury, that if you find from a preponderance of the evidence that, prior to the execution of the release introduced in evidence, an agent or agents of the defendant represented to the plaintiff, Zoa H. Zane, that her only injury was the injury to her right foot and lower right leg, which necessitated the amputation of said leg below the knee, and that she had not sustained any other injuries, and that she would be able to use an artificial limb and avoid the use of crutches, and if you further find from a preponderance of the evidence that said representations were not true and that plaintiffs believed the same and relied thereon, and that had it not been for such representations and such belief and reliance, the plaintiffs would not have executed said release, then, *although said agent or agents did not know that said representations were not true at the time they were made, and although there was no fraud or wrongful intent on the part of said agent or agents to deceive or defraud said plaintiff, the plaintiffs are not bound by said release so far as the injuries to the right femur or thigh bone of said plaintiff, Zoa H. Zane, and the results and consequences thereof, are concerned, and the plaintiffs can recover for such injuries* and the results and consequences thereof if you find from a preponderance of the evidence that the negligence of the defendant was the proximate cause of said injuries." [emphasis supplied]

It seems clear to us that in giving this (plaintiffs' requested) Instruction No. 2, the court completely parted company with the trial theory of appellees under which they rested their right of recovery on a showing of actual fraud. This instruction dealt with *constructive* fraud. It clearly authorized the jury to find for appellees if constructive fraud was shown by the evidence to have characterized acts of appellant's agents.

■ This aspect of the case becomes decisive in light of the rule announced by

the California decisions, where the right of recovery is predicated upon a showing of constructive fraud (to avoid a release). The party injured by the constructive fraud must rescind the release contract and offer restitution of the consideration. On the other hand, Meyer v. Haas, 126 Cal. 560, 58 P. 1042, holds that the rule of rescission and restitution does not apply where a party is tricked or deceived into signing a contract different by its terms and objects from the contract he had made and which he understands he is executing. Under such a state of facts, the fraud-feasor is not entitled to the return of the money paid as compensation for an acknowledged injury. See also Backus v. Sessions, 17 Cal. 2d 380, 110 P.2d 51; Tyner v. Axt, 113 Cal. App. 408, 298 P. 537; O'Meara v. Haiden, 204 Cal. 354, 268 P. 334, 60 A.L.R. 1381.

This instruction on *constructive fraud* is therefore erroneous in that nothing is said therein respecting the necessity for rescission of the release contract and restitution of the consideration paid thereunder. See Taylor v. Hopper, 207 Cal. 102, 276 P. 990; Garcia v. California Trucking Co., 183 Cal. 767, 192 P. 708. Cf. O'Meara v. Haiden, 204 Cal. 354, 268 P. 334, 60 A.L.R. 1381. It may be that the cases do not make wholly clear exactly at what point of time rescission and restitution must be effected, but the California rule would seem to indicate that both must be shown by the evidence before a right of recovery exists. By the instruction here complained of, the jury was told that it might return a general verdict for appellee without any proof or showing that they had offered to rescind the contract of settlement and/or to make restitution of the money paid to them under the release settlement.

This is more clearly demonstrated by the fact that on trial appellees admitted that they were unable to *tender* or *repay* the consideration which they received from appellant in the settlement, because they had spent most of the money. Their complaint also alleges substantially the same fact.

The court may have given the instruction on constructive fraud on the theory that the provisions of section 1542 of the Civil Code of California (see text of section in footnote 1) applied to the state of facts revealed by the evidence. Appellees requested an instruction which applied the rule of section 1542, but withdrew it.

In the absence of *actual fraud,* the express waiver of all rights under this section (1542) was valid. See Berry v. Struble, 20 Cal.App.2d 299, 66 P.2d 746. Cf. Hudgins v. Standard Oil Co., 136 Cal. App. 44, 28 P.2d 433.[2]

On this state of the record, it is clear that it was the province of the jury to determine from all of the evidence whether appellees had been tricked by the fraudulent acts and representations of appellant's agents into believing that they were signing a release which, by its terms, covered only the loss of a right foot and lower right leg.[3] Under California decisions, where such a fraud is practiced on the releasor and he is thereby led to execute a release which is different in its terms and objects from the contract he has made and which he understands he is signing, the release contract thus signed becomes absolutely *void.* This, because the mind of the releasor never consented to any such release. Herein it differs from a release the nature and contents of which the releasor understood correctly, but which he was led to execute by fraud and deception as to something *other than*

[2] For a comparison of additional cases dealing with the type of release employed in the instant case see: O'Meara v. Haiden, 1928, 204 Cal. 354, 268 P. 334, 60 A.L.R. 1381; Gambrel v. Duensing, 1932, 127 Cal.App. 593, 16 P.2d 284; Backus v. Sessions, 1941, 17 Cal.2d 380, 110 P. 2d 51. See also comment on section 1542 in Rued v. Cooper, 119 Cal. 463, 469, 51 P. 704.

[3] In Wilson v. San Francisco-Oakland Terminal Rys., 48 Cal.App. 343, 349, 191 P. 975, the court held that where a release of a claim for damages for personal injuries is tainted with *fraud* it should not be sustained, the question of whether or not such taint exists, being one to be submitted to and decided by the jury. See also Jordan v. Guerra, 23 Cal.2d 469, 144 P.2d 349. The rule of the Wilson case also supports the contentions of appellees that the proof they tendered regarding the agency of Dr. Blackman and Cameron was properly submitted to the jury for determination as to its probability and truth.

the *contents* of the release contract. In such latter case the contract would not be void, but only *voidable*.[4]

Some of the California decisions hold that in cases of actual fraud, the release contract should be reformed to speak the understanding of the parties at the time of its execution, and in that form, it stands as the agreement of the parties as to the known injuries.[5]

As indicated above, we confront a posture of the case where, under Instruction No. 2, the jury was at liberty to find a general verdict for appellees which could have rested on testimony which fell short of establishing the existence of actual fraud on the part of agents of appellant, but did prove, or tend to prove, the existence of constructive fraud in the various transactions shown by the evidence. Nothing in the record enables us to ascertain upon which theory of fraud the jury may have rested its general verdict. The presence of these conflicting instructions provides no assurance that the error did not materially affect the jury's verdict. At best, it was left to take its choice between two inconsistent theories of recovery.[6]

The verdict under the evidence might stand if it could be clearly shown (as below indicated) that it rested upon satisfactory proof of *actual* fraud, but for the reasons indicated above, it must fail if rested on proof of *constructive* fraud. Had there been a special or fact-verdict, or if the general verdict had been coupled with answers to fact-interrogatories clearly indicating that the general verdict was rested on proof of actual fraud, we would know to a certainty that giving the instruction on constructive fraud was harmless error.[7] As it is, we are unable to determine and therefore cannot say that it affirmatively appears from the whole record that giving these inconsistent instructions was harmless error. See Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402; Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239; Ah Fook Chang v. United States, 9 Cir., 91 F.2d 805; Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283.

Appellant has assigned as error the giving of certain instructions here considered. One of these advised the jury that appellant was estopped from claiming that the representations of Dr. Blackman cannot be attributed to it, and that the release was not a bar to the action, if the jury found: (a) That the statements and representations of Dr. Blackman were not true, (b) were relied on by appellees, (c) that Cameron, the claim agent knew of, approved and ratified said representations, (d) that appellant approved the settlement and accepted the benefits thereof (Plaintiffs' Requested Instruction No. 5). Appellant cites no cases in support of this contention. As applied here it does not incorrectly state the law.

Another instruction (set out above) dealing with the claimed substitution of forms

---

[4] Backus v. Sessions, 1941, 17 Cal.2d 380, 110 P.2d 51; Meyer v. Haas, 126 Cal. 560, 58 P. 1042; Tyner v. Axt, 113 Cal.App. 408, 298 P. 537 (rehearing denied); Cf. O'Meara v. Haiden, 1928, 204 Cal. 354, 268 P. 334; Mairo v. Yellow Cab Co., 208 Cal. 350, 281 P. 66 (rehearing denied); Raynale v. Yellow Cab Co., 115 Cal.App. 90, 300 P. 991.

[5] See Backus v. Sessions, 1941, 17 Cal. 2d 380, 110 P.2d 51; Raynale v. Yellow Cab Co., 115 Cal.App. 90, 300 P. 991; Tyner v. Axt, 113 Cal.App. 408, 298 P. 537 (rehearing denied); Jordan v. Guerra, 23 Cal.2d 469, 144 P.2d 349; O'Meara v. Haiden, 1928, 204 Cal. 354, 268 P. 334; Cf. Romano v. Seibt, 95 Cal.App. 586, 272 P. 1065.

[6] We do not overlook the argument that the test of the correctness of instructions is whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision. The harmless error doctrine is so eminently sensible that it should be freely used. But its use in connection with jury trials where, as here, the jury brings in merely a general verdict, often presents a troublesome problem.

[7] The Federal Rules of Civil Procedure, Rule 49, 28 U.S.C.A. following section 723c were designed to encourage and facilitate the use of the special verdict, or, in the alternative, the general verdict accompanied by the jury's answers to interrogatories as to issues of fact. As an appellate court we have no power to direct trial judges to call for fact-verdicts, but a general and unexplained lump verdict does not cover up substantial errors at the trial.

of release, is assailed. It requires no comment at this point in view of our disposition of the case.

Criticism is direct at an instruction dealing with the amount of damages the jury might award, this on the ground that it failed to require the jury to give credit for amounts paid by appellant under the release contract. Appellant's proposed instructions as to rescission and restitution were refused. Our decision disposes of these issues.

The case is remanded with directions to grant a new trial.