[Civ. No. 12234. Second Appellate District, Division Two.—September 13, 1939.]

MINNIE M. WETZSTEIN, Respondent, v. C. E. THOMASSON et al., Appellants.

Lasher B. Gallagher for Appellants.

Hitchcock, Cook & Obegi and Wiley J. Shannon for Respondent.

WOOD, Acting P. J.—Plaintiff commenced this action to recover damages for injuries which she suffered when an automobile in which she was riding collided with an automobile negligently driven by defendant. The accident occurred on December 4, 1936, on Glendale Boulevard in the city of Los Angeles near its intersection with Montgomery Street. Defendant appeals from a judgment entered in favor of plaintiff in the sum of $5,000.

Except for several hours spent in a doctor's office and in her place of business plaintiff remained at home and in bed for a number of days immediately after the accident. On December 4th and 5th and again on December 7th, an insurance adjuster called on plaintiff and on each occasion remained several hours discussing a possible settlement. On the last-mentioned date the adjuster secured plaintiff's signature to a document purporting to be a release of all claims for damages and left a release to be signed by plaintiff's husband. This release, which was for consequential damages suffered by the husband by reason of the injuries to plaintiff, was signed by the husband at plaintiff's request although the husband had never seen nor talked with the adjuster. Plaintiff received the sum of $175 and her husband the sum of $54.15 as consideration for executing the releases. Plaintiff's automobile, which was covered by collision insurance, was repaired by her insurance carrier and thereafter the claim for property damage was completely settled between her insurance carrier and defendant's insurance carrier.

In this action plaintiff sought and recovered a judgment for both general and special damages for personal injuries, exclusive of the items for which she received the sum of $175 from the adjuster. She neither tendered nor offered to restore to defendant the consideration which she and her husband had received for executing the release. Defendant pleaded the releases and the settlement with plaintiff's collision insurance carrier in bar of the action. After trial by the court without a jury judgment was entered for plaintiff awarding her $4,000 as general damages and $1,000 for medical expenses.

In his answer defendant pleaded the releases *in haec verba* and plaintiff failed to file an affidavit denying their genuineness and due execution. Defendant now contends that since under section 448 of the Code of Civil Procedure the genuineness and due execution of a written instrument which is pleaded *in haec verba* are deemed admitted unless plaintiff files an affidavit of denial, evidence on the validity of the releases was improperly admitted over his objection. Although it is true that under the circumstances of the instant case no issue as to the genuineness or due execution of the releases was presented, the failure to file the required affidavit did not preclude plaintiff from controverting the

releases by evidence of mistake, undue influence, fraud and any other defense that would be open if such releases were the basis of an action. (*Walsh* v. *Jacobson*, 3 Cal. App. (2d) 477 [39 Pac. (2d) 455]; *Moore* v. *Copp*, 119 Cal. 429, 432 [51 Pac. 630]; *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708].) The evidence in the instant case relating to the releases was directed to the issues of mistake, undue influence or fraud and was therefore properly admitted.

█ Defendant contends that the finding of the trial court to the effect that the releases were void and were not a bar to the action is not supported by the evidence. It appears from the evidence that at the time of the accident plaintiff was about 48 years of age and was engaged in business as a florist. As a result of the accident she was thrown forward in the automobile and the steering wheel was broken when her abdomen came in contact with it. Both knees and ankles were cut and her elbow injured. She was unconscious for a short while after the accident. At the time of the trial, October 21, 1938, plaintiff had not entirely recovered. Her weight had been reduced from 168 to 96 pounds.

Immediately after the accident plaintiff was taken to a doctor's office where her injuries were treated and an examination made for internal injuries. The accident occurred at about 7:40 A. M. on December 4, 1936, and at about noon on that day plaintiff left the doctor's office and went to her place of business because she was the only one who could open the shop and there were some orders for flowers which had to be filled. Plaintiff went home at about 4 P. M. and went to bed. Shortly after noon on the day of the accident the adjuster for defendant's insurance carrier called at plaintiff's place of business and remained there for several hours discussing a possible settlement of her claims. At that time plaintiff stated that she did not wish to discuss a settlement. The next day the adjuster called plaintiff on the telephone at 8 A. M. and then came to her home at about 9 A. M. Plaintiff was in bed and was in great pain, yet the adjuster remained for several hours talking constantly about a settlement, berating her physician, upon whom he had called, and stating that if she did not settle it would work a great hardship on defendant. The adjuster left at about 4 P. M. on that day. On Sunday, December 6th, the adjuster called her on the phone and stated he would not be out that day

but would be out on Monday. In reply plaintiff stated, "It is too soon, I do not know what it is going to turn into."

On Monday, December 7th, the adjuster came to plaintiff's home at about 9 A. M. and remained there until 4 or 5 P. M. He made repeated efforts to get plaintiff to sign the release and spoke of the sum of $300, stating in substance that they would pay for the lady who would take plaintiff's place in the flower shop for a period of thirty days and that they would pay the doctor bills. When the adjuster found out the amount of the doctor's bill and offered to pay it plaintiff said: "Well how do I know, what will I do about the rest of the doctor bill, that is just to date. You have asked him for the bill simply what has already accumulated." The adjuster assured her that they would take care of the bill. Plaintiff was told that the $175 which she received was to cover doctor bills to date and to pay the lady who was taking her place in the florist shop. Nothing was said about physical suffering, nor did the adjuster discuss the reason for the sum of $54.15 which was paid to her husband for his release. She was assured that future developments in her physical condition would be taken care of. Before the release was signed the adjuster read it to plaintiff but did not explain its legal effect. The signed release was taken by the adjuster when he left. During the four days that these negotiations were being carried on plaintiff was in great pain, was suffering from nervous shock and for at least part of the time was under the influence of opiates administered by her physician. Plaintiff testified that when she signed the release she understood that it covered only expenses incurred to date. The trial court found that the "adjuster remained constantly at her bedside pressing and importuning her for a settlement"; that the adjuster knew that plaintiff was a married woman living with her husband; that plaintiff refused to enter into a compromise with the adjuster in her then condition but that on December 7, 1936, entered into a "verbal agreement" with the adjuster by the terms of which she agreed to accept from the insurance company the amount of her doctor's bill to date, expenses for the repair of her car and for the employment of a substitute to work in her place of business. The court further found that by the terms of the "verbal agreement" any claim that plaintiff might have for pain and suffering or for further doctor bills or for "unknown claims for damages" were to be taken

care of later. The release actually signed by plaintiff manifestly did not follow the terms of the "verbal agreement". The court further found that plaintiff signed the release in the belief that the instrument covered only a release "of the items heretofore agreed upon"; that plaintiff was misinformed by the adjuster as to the contents of the instrument and as to its legal effect; that the plaintiff was at the time of signing the release suffering intense pain and anguish and was "under the influence of opiates to ease the pain and induce rest and her mind was not clear".

The circumstances of the instant case indicate clearly that the release was executed by plaintiff as a result of the "high-pressure" methods adopted by the adjuster. Plaintiff made no attempt to negotiate a settlement but the adjuster for defendant's insurance carrier voluntarily sought the interview with plaintiff within a few hours after the accident, at a time when plaintiff was in no condition physically or mentally to consider a settlement, and continued his lengthy importunities for a settlement for several days. Such conduct has been severely condemned in numerous decisions of reviewing courts. (*Winstanley* v. *Ackerman,* 110 Cal. App. 641 [294 Pac. 449]; *Tyner* v. *Axt,* 113 Cal. App. 408 [298 Pac. 537].) ▮ Although it is true that when a person with the ability to read and understand an instrument signs it, he is bound by the provisions of such instrument, in the absence of fraud or imposition, it is likewise true that a party to a contract will not be bound by it unless he assents to it and, if he did not in reality assent, such want of assent may be shown in order to avoid the effect of his signature. (*Smith* v. *Occidental Steamship Co.,* 99 Cal. 462 [34 Pac. 84].) In the instant case it is evident that plaintiff because of her condition was unable to give to the transaction the same careful consideration which she might ordinarily give to a business transaction. Although the release was read to her, the adjuster did not inform her as to its full legal effect and did not leave it in her possession in order that she might secure competent advice. Transactions of this nature should be subjected to the closest scrutiny. (*Tyner* v. *Axt, supra.*) Under the findings of the court plaintiff did not in reality assent to the provisions of the release which purported to waive all of her claims for damages present and future. There is ample evidence to support the finding of the court that the release was void.

A case bearing striking similarity to the case under review is the case of *Meyer* v. *Haas*, 126 Cal. 560 [58 Pac. 1042]. In that case the plaintiff received serious injuries but the physician in the employ of defendant paid him the sum of $25 and received a receipt which purported to release defendant from all claims by reason of the injuries. At a jury trial the release was pleaded by the defendant but the jury brought in a general verdict for the plaintiff and in answer to special interrogatories found that the physician had made misrepresentations to plaintiff as to the contents and legal effect of the instrument and had prevented the plaintiff from becoming acquainted with the character, contents and legal effect of the instrument. The jury specifically found: "He did not convey full information as to its contents, and said it was all right, and led him [the plaintiff] to believe that the twenty-five dollars only covered his loss of time while he was sick. . . . He withheld full explanation of the instrument, and led plaintiff to believe it was all right. He neglected to inform him that the acceptance of the twenty-five dollars barred any further action for damages of any nature whatever." In affirming the judgment the Supreme Court held: "That portion of the contract, therefore, purporting to release and satisfy the claim upon which the action is based is, on the findings of the jury, absolutely void for the reason that the mind of plaintiff never consented to any such a release, and the plaintiff should be bound only to the release and satisfaction of his claim for loss of time."

The objection has also been raised by defendant that in order for plaintiff to maintain this action she should have offered to restore to defendant the sum paid at the time of signing the releases. No offer to restore the consideration received is necessary where a party is tricked or deceived into signing a contract different in its terms and objects from the contract which she has made and which she understands that she is executing. No offer to return the money was necessary because plaintiff is not seeking to avoid a contract made by her but is merely showing that she did not make the contract which was apparently made by her. (*Meyer* v. *Haas, supra; Tyner* v. *Axt, supra.*) Plaintiff understood that the release covered only doctor bills incurred to date and the cost of obtaining a helper in the flower shop for thirty days. The judgment covered only such items of

damage as have accrued since the date of the settlement. The rule is well stated in *Garcia* v. *California Truck Co., supra*: "In other words, if the situation is such that reforming the release to make it read as it would have read except for the fraud upon the plaintiff, the release would still purport to be a bar to the plaintiff's cause of action, then in order to maintain his action he must rescind and avoid the release, and for rescission an offer of restoration is necessary."

█ Defendant advances the argument that since the cause of action for injuries to plaintiff is community personal property and by virtue of section 172 of the Civil Code the husband has the complete management and control of such property, the release executed by plaintiff's husband is a complete bar to the present action.

Although plaintiff's husband was not a party to the instant action, the trial court found that the release executed by him was void, apparently on the theory that the two releases were in reality executed as part of one transaction. Section 370 of the Code of Civil Procedure gives to the wife the right to maintain in her own name an action to recover damages for her personal injuries, and it is settled that damages for personal injuries to the wife are not recoverable *unless* she is made a party plaintiff. (*Redwing* v. *Moncravie*, 131 Cal. App. 569 [21 Pac. (2d) 986].) In a tort action by the wife to recover damages the husband *may* be joined as a party plaintiff but need not be so joined. See *Gomez* v. *Scanlan*, 155 Cal. 528 [102 Pac. 12], where the court states that this form of action is an "exception to the rule that the husband has control of the community property". Since the husband alone has no right to sue for and recover damages for personal injuries to his wife, it cannot be successfully contended that he alone can release or relinquish that right which is vested in the wife. To uphold such contention would create an anomalous situation without support either in reason or in law.

Defendant also contends that by admitting certain testimony over his objection to the effect that plaintiff's mind was not clear the court committed prejudicial error. This argument is based upon the earlier contention that no issue as to the validity of the release was presented by the pleadings. This contention has been answered in the discussion above set forth. Defendant did not suffer prejudice because

of other rulings on the admission of evidence which are subjected to criticism.

The judgment is affirmed.

McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 2, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 9, 1939.