[L. A. No. 5158. In Bank.—September 29, 1920.]

FELIX GARCIA, Respondent, v. CALIFORNIA TRUCK COMPANY (a Corporation), Appellant.

[1] PLEADING—DEFENSE FOUNDED ON RELEASE—ADMISSION OF GENUINENESS AND DUE EXECUTION—EVIDENCE AS TO OTHER DEFENSES—RIGHT OF PLAINTIFF.—In an action for personal injuries, the genuineness and due execution of a release of all claims is admitted, where a copy thereof is annexed to the answer and the plaintiff fails to serve and file an affidavit denying the same as provided in section 448 of the Code of Civil Procedure, but it is open to the plaintiff on the trial, without further pleading, to introduce evidence to sustain any other legitimate defense thereto.

[2] RESCISSION—RESTORATION OF CONSIDERATION—VOIDABLE CONTRACT OF RELEASE—APPLICABILITY OF CODE PROVISION.—The provision of section 1691 of the Civil Code that restoration or offer of restoration of everything of value received under a contract is essential to its rescission is applicable to a contract of release of a claim for damages for personal injuries where the release was obtained by fraudulent representations, since it is not void ab initio but voidable.

[3] ID.—RESCISSION OF RELEASE — FRAUD — RETENTION OF CONSIDERATION—RULE INAPPLICABLE.—The rule that a party is not required to restore that which in any event he would be entitled to retain is not applicable to a sum of money received as consideration for the release of a claim for personal injuries, where, in an action to recover for such injuries, rescission of the release is sought by the plaintiff on the ground of fraud, notwithstanding a judgment is recovered in a greater amount, since the money is not the plaintiff's in any event but is his only in the event that there has been a valid release.

[4] ID.—ACTION FOR PERSONAL INJURIES—RELEASE OF CLAIM—FRAUD —FINDING UNSUPPORTED BY EVIDENCE.—In this action for personal injuries wherein an absolute release of all claims was set up as a defense, the evidence is insufficient to support the finding that the release was obtained by fraudulent representation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

1. Necessity of returning or tendering consideration upon repudiation of release of damages for personal injuries, procured by fraud, notes, 4 Ann. Cas. 655; 10 Ann. Cas. 739; Ann. Cas. 1912D, 1084.

The facts are stated in the opinion of the court.

Edwin A. Meserve, Shirley E. Meserve, Meserve & Meserve and Harold G. Ferguson for Appellant.

W. Ona Morton, J. F. Moriarity and Behymer & Craig for Respondent.

ANGELLOTTI, C. J.—This action was initiated April 19, 1915, by plaintiff to recover damages for personal injuries sustained by plaintiff when, while upon a public street in Los Angeles on April 20, 1914, he was struck and run over by a horse belonging to defendant, which through defendant's alleged negligence was permitted to run away at large upon such street. In its answer, in addition to denying the allegations of the complaint as to negligence and damage, defendant set up an absolute release of "any and all causes of action, costs, charges, claims or demand of whatever name or nature, in any way arising or growing out of" the accident; executed by plaintiff in writing on July 20, 1914, in consideration of the sum of $350 then paid to him by defendant. It was stated therein that it was intended to cover not only all injuries or sickness occasioned by said accident of which plaintiff was then cognizant, but any sickness or injury which might thereafter develop, that the instrument had been read to him and translated from English into Spanish, his native language, and that he knew the contents thereof, and accepted the same "in compromise of my claim against said California Truck Company." [1] The genuineness and due execution of this instrument, a copy thereof being annexed to the answer, was admitted by the failure of the plaintiff to serve and file an affidavit denying the same, as provided in section 448 of the Code of Civil Procedure. Under our system of pleading it was, however, open to plaintiff on the trial, without further pleading, to introduce evidence to sustain any legitimate defense, except want of genuineness or due execution, to the new matter relative to the release set up in the answer. (*Baird* v. *Pacific Electric Ry. Co.*, 39 Cal. App. 512, [179 Pac. 449].) He did introduce evidence in support of a theory that the release was obtained by fraud. The trial court, finding against the release and in favor of plaintiff with regard to

the allegations of injury from negligence of defendant, and that he had suffered damage in the sum of $1,510, also found that he had received from defendant $710 ($350 paid him upon the execution of the release and $360 theretofore paid him, partly in cash and partly for his care and maintenance while disabled), which it deducted from the amount of damage found, giving judgment for the balance, eight hundred dollars.

This is an appeal by defendant from the judgment.

The only questions upon this appeal are in relation to the contract of release, which, of course, unless avoided in some legitimate way, constitutes an insuperable bar to recovery in this action for damages for injuries caused by the negligence of defendant. At no time prior to the commencement of the action did plaintiff attempt to rescind this contract of release, and his complaint in this action for damage for the original tort was altogether silent regarding it. At no time has he restored or offered to restore to defendant any part of the consideration paid by defendant therefor, or attempted to show any reason why he should not be compelled to do this as a condition precedent to rescission. The claim of defendant is that plaintiff cannot maintain this action for damages in the absence of a rescission of the contract of release, and that the facts just stated are fatal to any claim of rescission. If there was a valid contract of release, it would seem, notwithstanding that it was voidable because the consent of the plaintiff thereto was obtained by a fraudulent representation, that rescission was essential to its extinguishment, and that there could be no rescission without restoration of the consideration. Our statute is explicit on the subject of rescission. Section 1691 of the Civil Code provides that rescission of a contract, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with certain specified rules, one of which is that "he must rescind promptly, upon discovering the facts which entitle him to rescind" if free from duress, etc., and aware of his rights; and the other of which is stated as follows: "He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same," etc. [2] We are aware of no good reason why this express statutory provision is not as fully applicable to a

contract of release of claim for damages for personal injuries as to any other contract. Notwithstanding expressions in some of the many decisions on this question which might be taken as intimating a contrary view, an examination of the cases shows that this is generally accepted as true, especially in the presence of such a statutory provision as we have in this state. We are speaking, of course, of contracts of release that are not absolutely void from the beginning for illegality, or total want of competency to contract on the part of the party purporting to release, or any other cause warranting a conclusion that the purported contract was never an executed contract, but a mere ''scrap of paper'' without binding force, that could be entirely disregarded without any rescission. There are decisions in this state which include in the class of cases where rescission is not essential a case where by fraud or deceit the party has been induced to execute a release of his cause of action upon the understanding and belief that the written instrument was a release of something other than the cause of action sued on, and that it was not a release of such cause, of action. Such was the situation in *Meyer* v. *Haas,* 126 Cal. 560, [58 Pac. 1042], where the plaintiff was so induced to execute for $25 a release of *all* claims on account of his injuries, being made by fraud to believe and believing that he was discharging only such claim as he might have for loss of time. It was held that in such a case ''the contract . . . will be held to be what the maker of it intended it should be, and not what it was made to appear by the deception practiced,'' and that consequently there was no release of the cause of action involved in the action, which as the complaint was framed did not include any claim for loss of time, with the result that no rescission or restoration of the money received was essential. The plaintiff there, it was said, was ''not attempting to avoid a contract which he has made, but is showing that he did not make the contract which he apparently made. In such a case the written instrument in so far as it purports to release causes of action not understood by the party executing it to be included is held to be void *ab initio,* and so to come within the class of cases where the doctrine of rescission and restoration has no application. But the doctrine of *Meyer* v. *Haas, supra,* has no application where the party releasing

thoroughly understood that the release he was executing was what it purports to be, a release of the very cause of action he seeks to enforce by action, notwithstanding a misconception on his part induced by fraud as to some other statements in the writing. In other words, if the situation is such that reforming the release to make it read as it would have read except for the fraud upon the plaintiff, the release would still purport to be a bar to the plaintiff's cause of action, then in order to maintain his action he must rescind and avoid the release, and for rescission an offer of restoration is necessary.

In the case at bar we have a lawful contract executed by competent parties, which at most is voidable only by reason of the party releasing and intending by the instrument to release all causes of action having been induced to enter into the same by a fraudulent representation that the instrument contained a provision as to his employment by the defendant, which would have in no degree made the instrument anything other than an absolute release of all causes of action. Such is the case before us. We are saying this notwithstanding the finding of the trial court on this subject, to which we shall refer later. In such a case the contract stands unless extinguished in some mode allowed by law, and to accomplish a rescission thereof the statutory provisions relative to rescission must be complied with.

[3] It is claimed to be thoroughly settled that a party is not required to restore that which in any event he would be entitled to retain. This is a well-recognized rule (see *Matteson* v. *Wagoner,* 147 Cal. 739, 744, [82 Pac. 436], and cases there cited), but the difficulty is that it is not applicable under the facts of this case. As stated in the case of *Kley* v. *Healy,* 127 N. Y. 555, 561, [28 N. E. 593, 595], cited approvingly in *Matteson* v. *Wagoner, supra,* the rule is as follows: "A more satisfactory answer, however, may be found in the principle that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain *either by virtue of the contract sought to be set aside, or of the original liability.*" The action was one for the rescission of a release of judgment given upon the payment of an amount smaller than that to which "she was concededly entitled" under the judgment. The court said: "In any event, therefore, she had

only that which, *without dispute,* belonged to her.'' (Italics are ours.)   This case well illustrates the meaning of the rule.   The money received by the party belonged absolutely to her at the time of the commencement of the action, whether received as the consideration for the release of the judgment or retained as part payment on the original judgment.   It was hers by right in either event.   The situation was practically the same in *Matteson* v. *Wagoner, supra,* an action for the cancellation of certain notes and a mortgage given plaintiff and a recovery of the money loaned thereon, where, as shown by the opinion, if the plaintiffs failed in their action they would be entitled to retain the $165 paid as a payment of interest on the notes.   The money was theirs at the commencement of the action in either event, received as interest on the notes if they failed, retained as partial restoration of the money loaned if they succeeded.   In discussing this rule the supreme court of Kentucky said in *Fox* v. *Hudson,* 150 Ky. 115, [Ann. Cas. 1914A, 832, 150 S. W. 49], ''where the claim is for unliquidated damages or when the settlement is made to adjust a matter in dispute, or where there is a controversy as to the amount owing, and the parties agree upon a sum that shall be paid in settlement, the amount so paid must be returned if the party settled with seeks to avoid the settlement on the ground of fraud.   Where there is no dispute as to the sum due and the creditor is induced by fraud to accept a less amount than his whole debt, he may attack the settlement without returning what he has received.''   (See, also, *Brocklehurst etc. Co.* v. *Marsch,* 225 Mass. 3, 10, [113 N. E. 646].)   These cases show the true meaning of the rule.   In the case at bar the plaintiff originally had a claim for unliquidated damages for personal injuries.   Solely in consideration of the settlement and release of this claim, which he now seeks to avoid, he received $350 from defendant.   The simple rescission of the contract of release would leave him with a disputed claim for damages, and with no right whatever to retain this money paid him for an abandonment of all claim for damages.   This was the situation at the time of the commencement of the action.   The money paid *was not his in any event,* but was his only in the event that there had been a valid release of the claim for damages that he was then endeavoring to assert, and which would constitute a com-

plete bar to his action.   It seems clear to us that the rule
relied on has no application to such a case as this, and that
if in this case there was a voidable contract of release as
distinguished from a contract void *ab initio,* plaintiff could
not avoid the same on the ground of fraudulent representa-
tions without rescinding promptly upon the discovery of the
fraud and restoring the money paid as a consideration.

[4]   That the contract of release was at most a mere
voidable contract on account of fraudulent representation
as distinguished from one void *ab initio* seems to us to be
beyond question in view of the evidence.   The finding of the
trial court was substantially to the effect that while the
plaintiff, who was a Mexican and could neither read nor
write English, signed this release, which was written in the
English language, he was misled, tricked, and deceived by
an interpreter in the employ of defendant into signing a
contract different in its terms and object from the contract
which he had made with defendant and which he then
understood he was executing, in that he was led to believe
and did believe that the instrument contained an agreement
on the part of defendant to employ him for the balance of
his natural life at a wage of $2.50 per day, and further
that plaintiff did not release or acquit or discharge defend-
ant from or on account of any damage sustained.   In view
of what we have said the finding as to the understanding
of the plaintiff as to the contents of the instrument is not
sufficient to warrant the absolute disregard of the contract
of release as void *ab initio.*   However, after a most careful
consideration of the record, we are satisfied that it must be
held that the findings on the issue of release are without
substantial support in the evidence.   There is not even a
shred of evidence to show that plaintiff was ever told or
ever believed or understood that the contract of release con-
tained any provision whatever for his employment by de-
fendant, or that he was in the slightest degree deceived as
to the contents of the instrument.   Although examined as a
witness on his own behalf at the trial, he gave no testimony
whatever with relation to this agreement, or as to his under-
standing as to its contents.   His wife, who was present at the
execution, was not called as a witness.   The son, a boy thirteen
years old at the time of the release, and whose testimony is the
sole reliance of plaintiff in this regard, did not testify as

any misrepresentation being made as to the contents of the instrument. Even according to the boy's testimony the question of the employment of plaintiff by defendant was a matter not intended to be specified in the contract of release, but was a mere promise of employment for life at $2.50, per day to be evidenced by a separate "receipt" or "guarantee." Except for the testimony of the boy, the evidence is overwhelming as to the fairness of the dealings of defendant with plaintiff in the matter of the settlement, negotiated at the solicitation of plaintiff several weeks after the accident, and at the office of defendant, to which place he went with his wife and son for the very purpose of effecting a settlement. According to the testimony of all except the boy ,the proposed release was fully read to plaintiff by an interpreter (deceased prior to the trial) who translated it into Spanish for him, and then given to the boy to explain to his father. The boy himself signed a statement, written by himself thereon, that he had read it to his father, but testified that he did not so read it and wrote and signed the statement because he was told to do so. The boy's testimony as to the reading of the release by the interpreter to his father is exceedingly vague and indefinite, and admits that the interpreter did read "four or five lines," but not all. According to the other testimony, the matter of employment was not mentioned as a condition of the release at all, but after the release was signed the president of the defendant company, which had treated plaintiff with the utmost consideration and generosity from the time of the accident, told him he would give him employment, and had written and gave him a paper saying:

"To Felix Garcia.

"We will put you to work as soon as you are physically able, either in our corral or on our San Fernando ranch.

" CALIFORNIA TRUCK COMPANY,

"By GEORGE S. SAFFORD."

The boy's testimony was that this was given to his father before the execution of the release, on the father's request for a "receipt" or "guaranty" for work for life at $2.50 per day. The plaintiff did go to work for defendant for ?.25 per day and continued in such employment for six ?ks, when, a reduction in employees becoming necessary, ?was discharged. Apparently he never demurred as to

rate of wage or discharge until more than seven months had elapsed from the date of his discharge, when this action for fifty-one thousand dollars damages was instituted. The evidence is such as to indicate very strongly that there was no promise of permanent employment, and, except for the boy's testimony, that there was no promise of employment as an *inducement to the execution of the contract of release.* However this may be, it is clear to us that there was no substantial testimony to sustain the findings we have referred to. Accepting the testimony of the boy in the light most favorable to plaintiff, we have at best a contract of release the execution of which was induced by an independent promise of future permanent employment. As we have seen, such a contract cannot be treated as naught in the manner here attempted, and unless extinguished in some mode authorized by law it operates as a bar to plaintiff's action for damages. In so far as the record shows it has not been so extinguished.

The judgment is reversed.

Shaw, J., Wilbur, J., Olney, J., Lennon, J., Lawlor, J., and Sloane, J., concurred.

Rehearing denied.

All the Justices concurred.