[L. A. No. 20946.   In Bank.   Dec. 12, 1950.]

BETTY JANE CARRUTH, Appellant, v. ROBERT FRITCH et al., Respondents.

Edward Raiden for Appellant.

Eugene S. Ives and John Leslie Goddard for Respondents.

EDMONDS, J.—Betty Jane Carruth is suing for damages assertedly sustained by her on account of personal injuries which she received in a traffic accident. The complaint, filed more than one year after the time of injury, alleges that upon representations of the owner of the automobile in which she was injured, she executed a release of her right to recover damages. Asserting that the representations were false and made without any intention of performing them, she asks that the release be "set aside" and damages awarded to her.

A demurrer to this complaint was sustained with leave to amend. The appeal from the judgment entered after refusal to amend presents for decision the question as to whether the statute of limitations is tolled by fraud in the procurement of a release. Also to be considered in that connection is whether an offer to restore the consideration of such a release is essential to the statement of a cause of action.

In the first count of her complaint, Miss Carruth alleges that, at the time of the accident, she was riding as a guest in an automobile driven by Richard Fritch with the consent of Robert Fritch, the owner of the vehicle. Named with them as a defendant is the Connecticut Indemnity Company. It

is charged that, as a result of the willful misconduct of Richard Fritch, the automobile struck a stone wall and she sustained permanent injuries. The cost of medical attention and recurrent hospitalization during a period of two years exceeds $2,000 and her loss of salary is more than $4,000.

About four months after the accident, the complaint continues, while Miss Carruth was suffering from her injuries and under pressure of financial need, she executed a release of her claim for damages in consideration of the payment to her of $2,000 and certain promises. These promises, made by Robert Fritch for himself, Richard Fritch, and the insurance carrier, with the intent to induce her to sign a release, were that ". . . Robert Fritch and Richard Fritch would see that the plaintiff received of . . . Connecticut Indemnity Company and of . . . Robert Fritch and Richard Fritch all further and additional medical expenses and that plaintiff would also be compensated for all loss of salary." It is also alleged that Robert Fritch, for himself and the other defendants, told her "as a friend of long standing that she had no claim at law because she was a guest in his car and that if she proceeded to sue she would not be able to recover."

Upon information and belief, Miss Carruth pleads that the insurance company had knowledge of the negotiations for the settlement. The insurer and the other defendants also knew that she owed money for medical and hospital expenses and would immediately expend the money advanced, thereby becoming unable to tender it back as a prerequisite to rescission of the agreement. With such knowledge, the defendants procured the settlement without any intention of paying further medical expenses or compensating Miss Carruth for her loss of salary. By these promises and the representation, falsely and knowingly made, that she had no cause of action, Miss Carruth was induced to execute the release.

A few months after her initial discharge from the hospital, Miss Carruth alleges, she found it necessary to return for further treatment. Shortly thereafter she requested Robert and Richard Fritch to arrange for the payment of additional medical expenses and loss of wages. Their reply disclaimed any further obligation to her. In closing the first count of her complaint, Miss Carruth declares that she seeks no money judgment but only to have "set aside the release secured from her by the fraud of the defendants."

For a second cause of action all of the foregoing facts are repleaded and judgment is asked against Robert and Richard

Fritch for general damages, less $2,000 paid to her. Special damages for loss of wages and medical expenses are demanded, with credit for $500 paid by the insurer for medical care under the provisions of its policy.

The demurrer to the complaint asserts that neither count of it states a cause of action. The count for rescission of the release is attacked upon the ground that Miss Carruth has failed to allege an offer to restore the consideration as provided in section 1691 of the Civil Code. The statute of limitations is pleaded as a bar to the claim for damages.

As grounds for reversal of the judgment, Miss Carruth asserts that whenever fraud enters into the transaction, the cause of action arising thereon is not barred until the fraud is discovered. Because her complaint was filed within three months after the date alleged by her as the time she discovered the fraud, the demurrer should have been overruled. A further contention is that the willful misrepresentation made to her removes the bar of the one year limitation, and where equitable rescission of a release is sought, an offer to restore the consideration is not a requirement of the statement of the cause of action.

The respondents take the position that, because the gravamen of Miss Carruth's cause of action is damages for personal injuries, the one year limitation is controlling. They say that restoration, or offer of restoration, of consideration received under a release is an essential element in an action for rescission. Because there was no concealment of the facts upon which that cause of action is based, a fraudulent representation made for the purpose of obtaining the release does not change the action from one for personal injuries to one for relief from fraud. There can be no estoppel from pleading the statute of limitations because of misrepresentation in regard to lack of liability at law. Finally, the respondents argue, the fact that the consideration received for the release has been expended, does not relieve Miss Carruth from her obligation to restore the money before seeking rescission.

As defined by section 1572 of the Civil Code, actual fraud is ". . . 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive." ▇▇ In considering the ruling upon the demurrer, the allegations of the complaint must be accepted as true. The question, therefore, is whether, under the facts pleaded by Miss Carruth, the statute of limitation has been tolled and an action may be maintained to recover for the injuries claimed to have been received.

The sole issue upon the count for rescission is whether restoration of the consideration of the release, or an offer to repay the amount, is a necessary prerequisite to the maintenance of the cause of action. The respondents do not challenge the sufficiency of the allegations as to fraud.

Section 1691 of the Civil Code provides that rescission can be accomplished only by the use of "reasonable diligence to comply with the following rules: . . . 2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

■    Although tender or return of consideration usually must be made (*Kent* v. *Clark,* 20 Cal.2d 779 [128 P.2d 868, 142 A.L.R. 576]; *Seeger* v. *Odell,* 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291]; *Paxson* v. *Margulis-Stulman Co.,* 127 Cal.App. 94 [15 P.2d 191]), the rule is not inflexible. The code requirement is only that the party seeking to rescind must use "reasonable diligence" to restore that of value which he has received under the contract. "There are exceptional cases where restoration or an offer to restore before suit is brought is not necessary—as, for instance, . . . where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of the plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by final decree fully adjust the equities between the parties." (*California etc. Co.* v. *Schiappa-Pietra,* 151 Cal. 732, 739 [91 P. 593].) This principle has been applied in many cases. (See *Pacific Greyhound Lines* v. *Zane,* 160 F.2d 731; *Wetzstein* v. *Thomasson,* 34 Cal.App.2d 554 [93 P.2d 1028]; *Lawrence* v. *Ducommun,* 14 Cal.App.2d 396 [58 P.2d 407].)

■    Miss Carruth alleges that when making the assertedly fraudulent representations to her, the Fritches and their insurer knew her financial circumstances. This knowledge, she pleads, was that she would be obliged immediately to pay out the consideration for medical expenses incurred by reason of the alleged tort. She used the money for that purpose and, the complaint continues, the defendants knew that she then ". . . would be unable to raise the money necessary to tender back the amount which they had advanced. . . . [T]he defendants and each of them had no intention of keeping the

agreement and making the further payments for medical expense and loss of salary . . . but . . . were seeking to place the plaintiff in such a position that she could not tender to them the money advanced in the course of their fraud, and relied upon such facts and their fraud to prevent plaintiff from rescinding. . . .'' Under such circumstances, there is no legal reason for requiring Miss Carruth to restore the consideration received by her. Having known that the entire amount was to be applied to payment of medical expenses and she was without means to repay it, neither the Fritches nor their insurer is prejudiced by her failure to do so.

■ A timely action for personal injuries may be maintained notwithstanding a release procured by fraud. (*Jordan v. Guerra*, 23 Cal.2d 469 [144 P.2d 349].) The present action, however, was not commenced until over one year after the commission of the alleged tort. Rescission of the release executed by Miss Carruth is of no benefit to her unless the respondents' conduct in procuring it estops them from pleading the one year statute of limitations (Code Civ. Proc., § 340) as a bar to the cause of action for damages.

Under certain circumstances, the representations of one who is charged with negligence resulting in personal injuries may toll the statute of limitations. For example, in *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325], a passenger on a streetcar alleged that, by reason of the negligence of the defendant, he received an injury to his eye. The complaint also pleaded facts which may be summarized as follows: A physician employed by the railway company removed glass splinters from Pashley's eye and told him that he must go to no other doctor; the company would not be responsible if he did so. He was assured that there was no permanent injury to his eye, but the company's physician asked him to return in two years for a final check-up. He followed these directions and was then advised that, other than a need for glasses, his eye was perfectly healed. However, the injury caused a cataract which later resulted in total and permanent blindness. Although this fact was known to the physician at the time he made the representations, Pashley did not discover the permanency of his injury until approximately 12 years after the accident.

This court held that these allegations stated a cause of action for damages resulting from the negligent operation of the streetcar. The decision was placed upon the ground that ''. . . when the defendant is guilty of fraudulent concealment

of the cause of action the statute [of limitations] is deemed not to become operative until the aggrieved party discovers the existence of the cause of action." (25 Cal.2d at p. 229.)

The respondents distinguish the Pashley decision upon the ground that in it, and other cases upon which it rests, the plaintiff was allowed to sue after the period fixed by the statute of limitations because there was a fraudulent concealment of the facts giving rise to the cause of action. It is argued that there was no concealment of such facts from Miss Carruth.

The Pashley decision firmly established that a defendant who has, ". . . by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." (25 Cal. 2d at p. 231.) However, the only fraudulent representation pleaded or proved in that case was the concealment of material facts.

According to the allegations of the complaint now being considered, Miss Carruth would not have executed a release but for the fraudulent representations of the respondents. Knowing that her injuries were permanent and future hospital and medical expenses would be incurred, the respondents falsely represented to her that they would pay for all future medical care and attendant loss of wages. These representations do not go to the existence of the cause of action and the question for decision is whether the statute of limitations has been tolled because of them.

In *Armstrong* v. *Levan*, 109 Pa. 177 [1 A. 204], a prothonotary, when told that he was charged with the failure to index a judgment, requested the plaintiff not to sue and promised to pay any loss caused by his negligence. The plaintiff relied upon the promise and did not sue until after the cause of action was barred. It was held that the prothonotary was estopped to plead the statute. The court said: "The conversation referred to occurred before the statute had run, and it was a distinct promise to pay in consideration that the plaintiff below would not sue. If, therefore, she relied upon this promise,—if she was thereby lulled into security and thus allowed the six years to go by before she commenced her suit,— with what grace can the defendant now set up the statute? The promise operated not to revive a dead tort, but as by way of estoppel. It has all the elements of estoppel. The plaintiff relied and acted upon it; she has been misled to her injury; but for the defendant's promise she would have commenced her action before the six years had expired."

The same conclusion was reached in *Louisville & N. R. Co.* v. *Carter*, 226 Ky. 561 [10 S.W.2d 1064]. There the employer of the injured plaintiff promised that his hospital and doctor's bills would be paid, he would be kept on the payroll, and later the claim would be settled. These promises were made in return for the plaintiff's agreement not to sue. Relying upon the representations, plaintiff did not commence his action within the period of limitation. To the same effect is *Clover Splint Coal Co.* v. *Lorenz*, 270 Ky. 676 [110 S.W.2d 457].

Equally in point is *Baker-Mathews Mfg. Co.* v. *Grayling Lumber Co.*, 134 Ark. 351 [203 S.W. 1021], an action to recover the value of timber allegedly cut by the defendant. The suit was not instituted until after the period of limitation had expired. The evidence showed that the defendant had induced the plaintiff to believe that a settlement of the claim could be had without the necessity of suit. Relying upon these representations, the plaintiff delayed the commencement of the action, but the court refused to allow the defendant the benefit of the statute.

The case of *Renackowsky* v. *Water Comrs.*, 122 Mich. 613 [81 N.W. 581], was an action against the water commissioners of a city for personal injuries. The defendants made payments until a short time prior to the commencement of the suit. The commissioners, by resolution, declared that the plaintiff should receive his full salary while disabled. Under such circumstances, the court held, it would be unjust and inequitable to allow the statute of limitations to be interposed as a defense.

In *Empire Gas & Fuel Co.* v. *Lindersmith*, 131 Okla. 183 [268 P. 218], the plaintiff sued an oil company for negligently permitting waste oil and salt water to escape and flow over his crops. The court decided that the defendant was estopped to assert the statute of limitations as a defense to the action because the plaintiff's delay in filing suit was caused by his reliance upon an agreement to settle the matter without suit.

The basic principle upon which these cases rest is succinctly stated in *Howard* v. *West Jersey & Southern Railroad Co.*, 102 N.J.Eq. 517 [141 A. 755], as follows: "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." In the present case, the application of this rule is fully justified. The allegations

of her complaint, clearly show that Miss Carruth was lulled into a false sense of security by the fraudulent statements made to her. She refrained from bringing an action until after the period of limitation, because she was induced to believe that she would be fully compensated for all medical expenses and loss of salary without litigation. However, these promises were made with no intention that they would be performed. Having thus fraudulently induced Miss Carruth to delay filing suit, the respondents may not plead in defense of her claim for damages the very delay caused by their own conduct. The purpose of the statute of limitations is to protect a defendant from the prosecution of a stale claim; it may never be used to assure the success of his fraud.

The judgment is reversed and the cause remanded with directions to the court below to overrule the demurrer to the plaintiff's second amended complaint and to allow the defendants a reasonable time within which to answer.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent.

Plaintiff was paid $2,000 as consideration for the settlement and release of a disputed claim for personal injuries assertedly received while riding as a guest in an automobile owned by one defendant and driven by another. The settlement was made and the release executed about four months after the accident. The sole consideration passing to the defendants for the $2,000 which they paid was the release of the claim against them. About 18 months after the accident (substantially beyond the one-year limitation period), without rescinding the release as provided by law and without restoring or offering to restore the consideration she had received, plaintiff filed this action. The majority decision allows it to be maintained.

It appears to me that for this court, upon no further showing than is made here, to permit plaintiff to entirely avoid the release which she executed, without first restoring the consideration received by her, is to implement and encourage the practice of fraud by allegedly injured persons against those whom they claim are liable in damages for such injuries. Here plaintiff does not allege that regardless of the view taken of the evidence to be produced at a trial of the liability issue, she would be entitled to a judgment in excess of the $2,000 already paid to her, and, hence, that she is in any event entitled to retain that sum (see *Garcia* v. *California Truck Co.*

(1920), 183 Cal. 767, 769-773 [192 P. 708]; *Taylor* v. *Hopper* (1929), 207 Cal. 102 [276 P. 990]; *Westerfeld* v. *New York Life Ins. Co.* (1900), 129 Cal. 68, 83 [58 P. 92, 61 P. 667]; *Sime* v. *Malouf* (1949), 95 Cal.App.2d 82, 110-111 [212 P.2d 946, 213 P.2d 788]; *Bonacci* v. *Massachusetts Bonding & Ins. Co.* (1943), 58 Cal.App.2d 657, 664 [137 P.2d 487]; *Winstanley* v. *Ackerman* (1930), 110 Cal.App. 641, 645-647 [294 P. 449]; *McKenzie* v. *Los Angeles Life Ins. Co.* (1929), 97 Cal. App. 659, 663 [275 P. 1003]; *De Garmo* v. *Petitfils Confiserie* (1928), 93 Cal.App. 261, 275 [269 P. 692]; 22 Cal.Jur. 760, § 9).

There is no showing that this is not a contested lawsuit or that liability in excess of $2,000 is admitted by the defendants, or that such liability follows as a matter of law from facts which are admitted or as to the existence of which there is conclusive evidence. To the contrary, plaintiff's complaint (second amended) discloses that it is defendants' position, and so represented to plaintiff, that plaintiff "had no claim at law because she was a guest in his [defendant Robert Fritch's] car and that if she proceeded to sue she would not be able to recover. That . . . under an insurance policy maintained by said [defendant] Connecticut Indemnity Company for liability of defendants Robert Fritch and Richard Fritch . . . the plaintiff, being a guest, had no right to recover . . ." Even if upon trial it develops that defendants are liable and that plaintiff suffered damage exceeding $2,000, nevertheless, was not the claim then disputed and subject to compromise and release? Is it not good public policy to encourage, rather than to discourage, the compromise and settlement of personal injury claims?

Upon a trial of the issues it may develop that defendants are not liable at all, or if liable that plaintiff's damages are less than the $2,000 she has received. I think that under the circumstances shown here plaintiff should be required to have accomplished rescission upon legal grounds and to have restored the consideration received by her, before she should be permitted to maintain this tort action to recover money damages for her claimed injuries. As declared by this court in the Garcia case (p. 772 of 183 Cal.) the money paid to the plaintiff "*was not his in any event,* but was his only in the event that there had been a valid release of the claim for damages that he was then endeavoring to assert, and which would constitute a complete bar to his action." And as further set forth in *Sime* v. *Malouf* (1949), *supra* (pp. 110-111 of 95

Cal.App.2d), in cases which "treat of fraudulently procured releases of claims which, both before and after the execution of the release, were disputed as to right and as to amount . . . it is clear that the plaintiff must restore what he has received in settlement of the disputed claim before suing upon it. He cannot retain the benefits of the release and sue, for to sue would violate the terms of his bargain. To hold otherwise would frustrate the very purpose of the release and destroy its effectiveness as a favored device for eliminating litigation. Hence rescission is necessary; and may be effectively accomplished only by returning the entire consideration received, for if plaintiff should fail to establish his cause of action, he would not be entitled to retain anything. The rule in such circumstances appears to be well settled. Equally well established, however, is the exception to the rule: A restoration is not necessary, in order to avoid the bar of a release, where there is no question as to the right of the plaintiff, arising independently of the release itself, to retain what he received. [Citations.]" As already emphasized plaintiff here does not allege facts which bring her within any recognized exception, or which establish a reasonable basis for a new exception, to the rule requiring rescission and restoration of consideration.

It is further to be noted that plaintiff does not attempt to stand upon the contract of release executed by her and recover the other considerations which she alleges were promised to her; i. e., "all further and additional medical expenses [in addition to the money already received by plaintiff] and . . . all loss of salary." Rather, she expressly seeks "to set aside the release secured from her" by the alleged fraud of the defendants, and to recover general damages of $100,000 "less the amount of $2,000," as well as special damages. On the very face of the majority opinion it appears that plaintiff will be unable to restore the consideration she has received for a release of her claim if she does not prevail in this action. In that event upon whom will the fraud have been perpetrated?

There is nothing salutary about the decision of the majority in this case. Its reasonable effect will be to encourage and implement fraud, not to discourage it. And furthermore, it must necessarily tend to promote litigation: litigation for both good causes of action and fraudulently asserted causes of action. It will promote litigation on good causes of action because it will tend to discourage the making of settlements

by defendants in any case. If this opinion stands, what possible benefit can a person receive from the money he expends? It would seemingly be an improvident counsellor who would permit his client to settle any such claim. After waiting until the memory of honest witnesses has been dimmed by time, or until such witnesses are wholly unavailable, the unscrupulous can boldly assert fraud, and, with everything to gain and nothing to lose, can prosecute the claim which the honest, generous, or compassionate—and foolish—had laid out his money to settle.

I would uphold the ruling of the trial court that plaintiff has failed to state a cause of action, and would affirm the judgment of dismissal which followed plaintiff's failure to amend her complaint within the time allotted.

Shenk, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied January 11, 1951. Shenk, J., Schauer, J., and Spence, J., voted for a rehearing.