[No. D012858. Fourth Dist., Div. One. June 14, 1993.]

CHARLES G. SHAFFER et al., Plaintiffs, Respondents, and Cross-appellants, v.
NICHOLAS F. DEBBAS et al., Defendants, Appellants and Cross-respondents.

34

**COUNSEL**

Haight, Brown & Bonesteel, Roy G. Weatherup, Robert L. Kaufman, Caitlin Doyle Berfield, Campbell & Associates, John B. Campbell and Anna D. Torres for Defendants, Appellants and Cross-respondents.

Sullivan, Hill, Lewin & Markham, David R. Markham and Stephen B. Morris for Plaintiffs, Respondents and Cross-appellants.

**OPINION**

**WIENER, Acting P. J.**—Both plaintiff-homeowners and defendant-contractors appeal from a judgment in favor of plaintiffs Charles and Betty Shaffer for damages based on theories of negligence and breach of warranty arising from the construction of a custom home. A detailed review of the lengthy record in this case is unnecessary for the purposes of the issues raised in this appeal. It is sufficient to note that the Shaffers contracted with the Avenida Alondra joint venture to build a custom house for them at a purchase price of $1.3 million. The house was warranted to be free from defects in materials and workmanship for one year.

The Shaffers took possession in August 1983 and almost immediately began experiencing a variety of problems owing largely to drainage defects and improper installation of the heating and air conditioning system. The defects were not repaired despite repeated promises by the builders to do so, and the condition of the house deteriorated. In 1987 the Shaffers moved from the house because of its deteriorating condition and in December 1988 they sold the property for $950,000.

This lawsuit was filed in October 1986. Named as defendants were the two joint venturers, Pieri-Debbas Enterprises (a partnership) and Franton, Inc. Also named were Franton's sole shareholder (Frank Semmo), the two corporate general partners of Pieri-Debbas (Debbas Construction, Inc., and T-Bear, Inc.) and the sole shareholders of Debbas Construction and T-Bear

(Nicholas Debbas and James Pieri, respectively). Debbas, Pieri and Semmo were alleged to be alter egos of their individual corporations. These defendants are collectively referred to as the builder-defendants. In addition, the Shaffers also sued the project architects (Sillman/Wyman & Associates) and the heating and air conditioning subcontractors (Strang Heating and Air Conditioning, Inc.).[1] All defendants were jointly represented at trial.

The jury found in favor of the Shaffers pursuant to a complex set of special verdict forms. The original judgment awarded the Shaffers $204,000 for property damage, of which $3,000 was to be paid by Strang. The special verdicts broke the $204,000 down into three components: (1) $130,000 represented the reasonable cost of repairing the house while the Shaffers lived there; (2) $44,000 represented damage to furniture in the house; and (3) $30,000 represented compensation for expenses the Shaffers incurred in arranging for alternate living quarters. Charles Shaffer was awarded $1,782.42 damages for emotional distress, while Betty Shaffer was awarded $32,083.59 on a similar theory. The judgment provided that the Shaffers would recover nothing from defendants Semmo, Franton, Inc. and Sillman/Wyman. Later amended judgments included attorney fees (based on a fee provision in the construction contract) and costs. The final amended judgment provided that the Shaffers' award for property damage and emotional distress (other than the $3,000 assessed against Strang) was recoverable against Debbas and Pieri individually, the Pieri-Debbas partnership and Debbas Construction. Costs of $38,073.73 were assessed against the same defendants. Attorney fees of $241,900 were also assessed against the same defendants and, in addition, T-Bear, Inc.

## DISCUSSION

### I. *Defendants' Appeal*

#### A. *Evidence of Collateral Source Payments*

In 1987, the Shaffers filed an action against their homeowners' insurer, St. Paul Fire & Marine Insurance Company, to recover for the same property damage at issue in this case. A jury returned a verdict in favor of the Shaffers, awarding $753,000 in damages. Following the judgment, St. Paul and the Shaffers agreed to settle their dispute. In exchange for a discount in excess of $250,000 on the judgment, St. Paul waived any rights of subrogation it had in this action, leaving the Shaffers to prosecute without intervention by St. Paul.

---

[1] The complaint also named the project soils engineer (San Dieguito Soils, Inc.) but it did not participate in the trial as a result of a federal bankruptcy stay.

 Defendants unsuccessfully sought to introduce evidence of the St. Paul settlement as an offset against any property damage judgment in this case. They now contend that the exclusion of the evidence was error. Responding to the Shaffers' argument that the collateral source rule (see *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]) precludes such an offset, defendants argue that the rule "applies only to personal injury claims, where a company providing medical insurance for which the injured person has paid is not in a position to pursue a subrogation claim."

 The collateral source rule provides that where "an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend*, *supra*, 2 Cal.3d at p. 6.) The rule has been repeatedly reaffirmed by the California Supreme Court as "a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and other eventualities." (*Id.* at p. 10; see also *Hrnjak* v. *Graymar, Inc.* (1971) 4 Cal.3d 725, 729-730 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224].) We are, of course, bound by the Supreme Court's pronouncements. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) As to defendants' suggestion that the rule can somehow be limited to cases of personal injury involving medical insurance payments, the Supreme Court's statement of the rule suggests no such limitation and its reference to "other eventualities" (quoted above) is inconsistent with the proffered interpretation. Indeed, the Supreme Court has expressly stated the rule so as to include property damage. (*Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198].) As the court summarized in *Philip Chang & Sons Associates* v. *La Casa Novato* (1986) 177 Cal.App.3d 159, 166 [222 Cal.Rptr. 800], "The rule has been oft repeated to provide that where a person suffers property damage, the amount of damages shall not be reduced by the receipt by him of payment for his loss from a source wholly independent of the person who caused the injury." The contrary rule suggested by defendants would result in a substantial windfall to those parties principally responsible for a plaintiff's property damage.

Moreover, the rule worked as it should have in this case. As *Helfend* explains, the feared "double recovery" by a plaintiff seldom occurs because the paying insurer is subrogated to the rights of the insured as against the defendants who caused the injury. (See *Helfend*, *supra*, 2 Cal.3d at pp. 10-11.) Here, St. Paul was subject to a $753,000 judgment in favor of the Shaffers. In exchange for a $250,000 discount, it was apparently willing to

wager that the Shaffers would recover no more than that amount as against defendants. As it turns out, the total award for property damage less alternate living expenses was $174,000.[2] In effect, St. Paul obtained more than it would have had it paid the judgment and pursued its subrogation rights.

We accordingly conclude the trial court correctly prohibited defendants from introducing evidence of the Shaffers' receipt of insurance payments from St. Paul.

B. *Reduction of Property Damage Award Due to Failure to Mitigate Damages*

By special verdict the jury found that 25 percent of "the total amount of property damage to the house . . . could have been avoided by plaintiffs' reasonable care and diligence to avoid loss and minimize the damages." Also, in a separate special verdict on negligence, the jury found that 5 percent of "the total negligence which was the legal cause of the plaintiffs' damage" was attributable to the "contributory negligence" of the Shaffers. The trial court refused to reduce the property damage award by any amount attributable either to a failure to mitigate damages or the Shaffers' comparative negligence.

■ We agree with defendants that the component of the damage award represented by the reasonable cost of repairing the property—$130,000— must be reduced by the 25 percent "mitigation of damage" figure determined by the jury. A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. (E.g., *Brandon & Tibbs* v. *George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 460 [277 Cal.Rptr. 40] [contract]; *Green* v. *Smith* (1968) 261 Cal.App.2d 392, 396 [67 Cal.Rptr. 796] [tort].) Here the jury determined that 25 percent of the "property damage to the house" could have been avoided. That damage was measured by the cost of repair, i.e., $130,000. The court was obligated to give effect to the jury's finding and reduce this aspect of the award to $97,500.

The Shaffers argue the jury must have intended the 25 percent reduction to apply only if the property damage was measured by the diminution in value of the residence. (See *post*, pp. 46-47.) In support of this assertion they point to evidence indicating the Shaffers sold the house at a below-market price. While this may be what the jury focused on, the special verdicts, unfortunately, did not separate the mitigation-of-damages finding as it applied to the

---

[2]Indeed, we later conclude that even this amount must be reduced to $141,500. (See *post*, this page.)

different measures of damages. Moreover, there was evidence which would support a finding that the cost of repair was higher than it should have been due to the Shaffers' landscaping work, overwatering and installation of solar panels. Having failed to request more specific findings as to the mitigation-of-damage issue, the Shaffers are bound by the plain language of the verdict.

■ We reject defendants' additional contention that the 25 percent reduction should be applied as well to those portions of the property damage award representing damage to furniture ($44,000) and additional living expenses ($30,000). The jury only found that some of the "damage to the house" could have been mitigated. The special verdict provides no basis for concluding that any portion of the furniture damage or additional living expense was avoidable.

We likewise reject defendants' argument that an additional 5 percent must be deducted to give effect to the jury's comparative negligence calculations. The special verdicts are far from clear that the collective 5 percent comparative negligence figure (2½ percent for both Charles and Betty) is not at least to some extent duplicative of the 25 percent mitigation-of-damages reduction. In any event, we are persuaded that comparative negligence is not a defense to a breach of express warranty action. (See, e.g., *Hensley* v. *Sherman Car Wash Equipment Company* (1974) 33 Colo.App. 279 [520 P.2d 146, 148]; 2 Shapo, The Law of Products Liability (2d ed. 1990) ¶ 20.01[15], p. 20-15.) Assuming the negligence special verdict should result in an additional 5 percent reduction as to that theory, the judgment would nonetheless reflect the greater amount attributable to the breach of warranty theory.

C. *Statute of Limitations: Emotional Distress*

■ There was abundant evidence indicating that the builder-defendants, particularly Debbas, continued to make promises to the Shaffers as late as 1987 that the problems with the house would be fixed. Defendants concede this evidence was sufficient to toll the statute of limitations with respect to the property damage claim. (See, e.g., *Senior Housing* v. *Nakawatase, et al.* (1989) 192 Ill.App.3d 766 [139 Ill.Dec. 878, 549 N.E.2d 604].) They assert, however, that the Shaffers' respective claims for emotional distress were barred by the applicable one-year statute of limitations. (See Code Civ. Proc., § 340, subd. (3).)

The jury determined that Charles and Betty each became aware of his or her emotional injury and its cause in June and August of 1984, respectively. It found in addition that defendants made no promises to the Shaffers that

their emotional distress would be compensated. Nonetheless, it also concluded that conduct by defendants induced the Shaffers to delay filing their emotional distress claims. Defendants argue that the evidence showing defendants' continuing promises to repair the house is insufficient to support this latter finding.

■ A defendant will be estopped to invoke the statute of limitations where there has been "some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 523, p. 550.) It is not necessary that the defendant acted in bad faith or intended to mislead the plaintiff. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 690 [37 Cal.Rptr. 46]; *Industrial Indemn. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 690 [252 P.2d 649].) It is sufficient that the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings. (*Industrial Indem., supra,* 115 Cal.App.2d at p. 690.) "[W]hether an estoppel exists—whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice—is a question of fact and not of law." (*Pieper, supra,* 224 Cal.App.2d at pp. 690-691; *County of Santa Clara* v. *Vargas* (1977) 71 Cal.App.3d 510, 524 [139 Cal.Rptr. 537].)

■ The estoppel issue in this case arises in a unique context. Defendants' wrongful conduct has given rise to separate causes of action for property damage and personal injury with separate statutes of limitation. (See *Holmes* v. *David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 789 [76 Cal.Rptr. 431, 452 P.2d 647].) Where the plaintiffs reasonably rely on defendants' promise to repair the property damage without a lawsuit, is a jury permitted to find that plaintiffs' decision to delay filing a personal injury lawsuit was also reasonable? We conclude such a finding is permissible on the facts of this case.

Where a potential defendant has promised to remedy a portion of the damages suffered by the plaintiff, it would be unreasonable to expect the plaintiff to jeopardize the possibility of repair by filing a lawsuit as to items of damage not covered by the defendant's promise. This is particularly true where, as here, the defendant's promise relates to a substantial aspect of the dispute. Certainly the effect of a contrary rule would be to foster the precipitous filing of actions and reduce the possibility of settlement without litigation, outcomes hardly in the best interests of the judicial system or the public at large.

In addition, it may be that at the point in time where the one-year personal injury statute of limitations expired, plaintiffs were willing to waive any

claim of entitlement to personal injury compensation in exchange for defendants' promise to repair the property damage. When defendants failed to fulfill that promise, it hardly seems fair to enforce an implied waiver of the personal injury claim. A somewhat analogous issue arose in *Carruth* v. *Fritch* (1950) 36 Cal.2d 426 [224 P.2d 702, 24 A.L.R.2d 1403] where plaintiff Carruth, a passenger in an automobile owned by the defendant Fritch and driven by his son, suffered injuries in a traffic accident. Before any suit was filed, in exchange for Carruth's release Fritch agreed to pay plaintiff $2,000 for already incurred medical expenses and to cover any future medical expenses related to the injury. Fritch also agreed to compensate plaintiff for lost wages.

Carruth contacted Fritch after she was forced to reenter the hospital for treatment but Fritch disclaimed any obligation to her. She then filed suit seeking to recover for all her injuries, including pain and suffering damages, less the $2,000 already paid. The court began by noting that "[a] timely action for personal injuries may be maintained notwithstanding a release procured by fraud" (36 Cal.2d at p. 431) and went on to explain that the issue in the case was whether the action filed more than a year after the injury occurred was barred by the statute of limitations or whether Fritch's conduct in obtaining the release estopped him from invoking a limitations defense. (*Id.* at p. 432.) It held that Carruth justifiably "refrained from bringing an action until after the period of limitation, because she was induced to believe she would be fully compensated for all medical expenses and loss of salary without litigation." (*Id.* at p. 434.) Accordingly, she was entitled to prosecute her claim for personal injuries.

Similarly here, the Shaffers delayed bringing an action in reliance on defendants' promises that the property damage would be repaired. Where defendants failed to fulfill that promise—indeed where the evidence suggests defendants never intended to perform—the jury could reasonably find that defendants were estopped to assert a limitations defense and the Shaffers were entitled all damages they suffered as a result of defendants' conduct.

D. *Defendants' Entitlement to Costs and Attorney Fees*

On a variety of theories defendants claim entitlement to attorney fees and costs. In view of the conclusions we reach on the substantive issues in this case, we dispose of these contentions in a summary fashion as follows:

(1) In view of our conclusion that Franton, Inc., and T-Bear, Inc., were properly added as judgment debtors (see *post*, p. 46), we reject their argument that they were entitled to fees and costs as prevailing defendants.

(2) ■ Our conclusions with respect to the proper calculation of property damage (*ante*, pp. 41-42) necessarily imply our rejection of the builder-defendants' argument they are entitled to costs incurred after December 28, 1989, the date of their joint offer pursuant to Code of Civil Procedure section 998 in the amount of $350,001. Allowing for the deduction for failure to mitigate damages as we have explained, the total judgment, including property damage ($171,500), personal injury ($33,866.01) and "pre-998" offer attorney fees ($153,914.47), still exceeds defendants' section 998 offer.

(3) Defendant Sillman/Wyman is entitled to costs as a prevailing party. (See Code Civ. Proc., § 1032, subd. (b).)

(4) The Shaffers do not appear to contest defendant Strang's claim of entitlement to costs incurred after April 11, 1989, the date of its $25,000 offer pursuant to Code of Civil Procedure section 998.

(5) The Shaffers filed a postjudgment motion to have defendant Semmo declared an alter ego of Franton, Inc., which was never ruled on because it was pending at the time the notice of appeal was filed. Semmo is entitled to fees and costs as a prevailing defendant unless, on remand, the Shaffers renew and the trial court grants the alter ego motion.

In light of our conclusions, a remand is necessary for the limited purpose of allowing the trial court to determine the amount of costs due defendants Sillman/Wyman, Strang, and Semmo (if any).

## II. *Plaintiffs' Cross-appeal*

### A. *Addition of Judgment Debtors*

■ Relying on settled principles of law as to the liability of joint venturers and general partners, the Shaffers argue the trial court erred in failing to include Franton, Inc., and T-Bear, Inc., as judgment debtors. Defendants respond that the jury never found that the Avenida Alondra joint venture was liable but only that certain constituent entities bore responsibility for the Shaffers' damages. They assert that the fact the jury found the warranty was breached is not dispositive because the jury could have found the breach did not cause the Shaffers' losses. Defendants attempt to support this argument by reference to the special verdict form on negligence which, they contend, indicates the jury found that T-Bear and Franton did not cause any damage to the Shaffers.

We think defendants misread the special verdict forms. As a second question following the finding of a breach of warranty, the jury was asked to

specify the defects in the house which existed within one year of the completion of the house and the damages attributable to each. The total damage figure, $130,000, matches the cost-of-repair damage figure specified by the jury on the following page where it calculated the property damage. While the special verdicts might have been more artfully drafted, we think it clear the jury found a breach of warranty by the Avenida Alondra joint venture and awarded damages on that basis.

The negligence special verdict does not suggest a different conclusion. The jury was given a list of defendants and asked to determine which were negligent. Defendants Semmo, Franton, T-Bear and Sillman/Wyman were found to be not negligent. The next question asked, "As to each defendant that you answered "Yes" in response to Question No. 1, was such negligence legal cause of damage to the plaintiff?" Although the question did not call for a response as to the four defendants who were found not negligent, the jury nonetheless answered "No." Contrary to defendants' argument, these responses do not indicate a factual finding that Franton and T-Bear were not a legal cause of the Shaffers' damages based on vicarious liability theories owing to their status as a joint venturer or general partner of a joint venturer, and in any event the negligence special verdict cannot detract from the jury's earlier finding that the Shaffers suffered damage as a result of the joint venture's breach of warranty.

The jury having found that the joint venture breached the Shaffers' warranty, settled principles of commercial law require that both joint venturers (Pieri-Debbas Enterprises and Franton) are liable. (See *Smalley* v. *Baker* (1968) 262 Cal.App.2d 824, 837 [69 Cal.Rptr. 521], disapproved on other grounds in *Weiner* v. *Fleischman* (1991) 54 Cal.3d 476, 485-486 [286 Cal.Rptr. 40, 816 P.2d 892].) Because Pieri-Debbas was a partnership, its general partners (Debbas Construction, Inc., and T-Bear) are jointly and severally liable for its obligations. (See Corp. Code, §§ 15013, 15015.) Accordingly, the judgment, to the extent it makes an award for property damage, will be modified to add Franton, Inc., and T-Bear, Inc., as judgment debtors.

B. *Measure of Damages*

 The jury calculated the damage to the Shaffers' residence using the alternative theories of cost of repair and diminution in value. Because diminution in value ($585,000) greatly exceeded the cost of repair ($130,000), judgment was entered based on the lesser cost-of-repair figure in accord with the general rule. (See, e.g., *Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 576 [136 Cal.Rptr. 751].) Relying by analogy on this

court's decision in *Orndorff* v. *Christiana Community Builders* (1990) 217 Cal.App.3d 683 [266 Cal.Rptr. 193], the Shaffers argue their actual sale of the house in a distressed condition should result in a damage award based on diminution of value, the loss they actually suffered.

In *Orndorff* we relied on *Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858 [162 Cal.Rptr. 104] in holding that a plaintiff might be awarded the actual cost of repair even though it exceeded the diminution in value of his or her property if their was a legitimate "personal reason" why the plaintiff chose to keep the property rather than sell. We noted that a rigid application of the "lesser measure" rule would force many plaintiffs to abandon their personal residence. (217 Cal.App.3d at p. 690.)

In this "flip side" of *Orndorff*, awarding damages based on cost of repair will not force plaintiffs to remain on property they prefer to sell. Indeed, the prudent course for a plaintiff in such a situation would be to make the repairs and then sell the property at the inflated price. █ ██ We see no basis to depart from the general rule on the facts of this case.[3]

### Disposition

The judgment is modified by reducing the amount awarded for property damage to $171,500 and by including defendants Franton, Inc., and T-Bear, Inc., as judgment debtors. As modified, the judgment is affirmed. The case is remanded to the superior court for the limited purpose of calculating the amount of costs due defendants Sillman/Wyman, Strang and Semmo (if any). Respondents and cross-appellants shall recover costs for this appeal.

Froehlich, J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 16, 1993.

---

[3]The Shaffers also suggest a different measure of damages may be appropriate as to their cause of action for negligent misrepresentation. Although it is true the jury found that certain of the defendants made negligent misrepresentations to the Shaffers which induced their purchase of the house, the verdict forms made no attempt to quantify the damages flowing from these misrepresentations other than as part of the general calculations of property damage based on cost of repair and diminution of value. Having failed to object to the special verdict forms or otherwise raise this issue in the trial court, the Shaffers are precluded from making a complaint here.