Filed 12/22/23  Leamy v. East Bay Municipal Utility Dist. CA 1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KRIS LEAMY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> EAST BAY MUNICIPAL UTILITY DISTRICT, <br><br> Defendant and Respondent. | A167275 <br><br> (Contra Costa County <br> Super. Ct. No. MSC21-00753) <br><br> ORDER MODIFYING OPINION <br> AND DENYING REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on December 4, 2023, be modified as follows:

1. On page 13, after the second sentence of the first full paragraph that ends, "they concede that the sound emitted by the Las Aromas plant does not reflect the level of noise that will emanate from the Sunnyside Pumping Plant," add as footnote 4, the following footnote, which will require the renumbering of all subsequent footnotes:

> [4] In a petition for rehearing, plaintiffs assert they did not concede but disputed that the sound emitted by the Las Aromas plant does not reflect the level of noise that will emanate from the Sunnyside Pumping Plant. Plaintiffs cite, however, to a "reply separate statement"

in support of their own motion for summary judgment, a document not authorized under the Code of Civil Procedure. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶ 10:220.6) In their opposition separate statement to defendant's motion for summary judgment, plaintiffs indeed stated the fact that "[t]he sound emitting from the Las Aromas Pumping Plant visited by Mrs. Leamy in 2019 did not reflect the level of noise that will emanate from the Sunnyside Pumping Plant" was "[u]ndisputed for purposes of this motion." We note that EMBUD cited to that portion of the record in its respondent's brief, and plaintiffs did not respond to the point either in their reply brief or at oral argument in response to this court's tentative opinion. In any event, as we explain further below, plaintiffs' reliance on Rehnstrom's testimony fails to raise a triable issue of fact as to delayed discovery.

There is no change in the judgment.

Appellants' petition for rehearing is denied.

Dated:

_____
Humes, P.J.

2

Filed 12/4/23  Leamy v. East Bay Municipal Utility Dist. CA 1/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| KRIS LEAMY et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT,<br><br>        Defendant and Respondent. | A167275<br><br>(Contra Costa County<br>Super. Ct. No. MSC21-00753) |

In 2011, the East Bay Municipal Utility District (EBMUD) purchased property from Kris and Robin Leamy (the Leamys or plaintiffs) for construction of a water pumping plant.  During negotiations in 2009, a representative of EBMUD told the Leamys the pumping plant would emit no audible sound.  After they sold the property, in 2013 and 2014, the Leamys participated in public meetings at which EBMUD represented the sound emitted from the plant with mitigation measures in place would be approximately equivalent to that of a library.  In 2019, however, Kris Leamy visited a fully constructed plant and was "shocked" at the level of noise she heard.  The Leamys filed a lawsuit alleging several fraud-related and breach of contract claims, seeking declaratory relief and rescission of the sale agreement.

The trial court granted a motion for summary judgment in favor of EBMUD on the grounds that the applicable statutes of limitations barred plaintiffs' claims, and their fraud claims failed because EBMUD's representations were not statements of past or existing fact on which a fraud claim could be premised. We will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Leamys Sell Property to EBMUD

EBMUD is a public agency that provides water to 1.44 million customers. In doing so, EBMUD uses many miles of pipeline and 124 pumping plants, which move water from one pressure zone to another.

In 2006, the EBMUD Board of Directors approved the " 'Water Treatment and Transmission Improvements Program' " (WTTIP), a program to construct and improve water facilities in the greater Lamorinda area, which includes Lafayette, Orinda, Moraga, and Walnut Creek. As one aspect of the WTTIP, EBMUD identified the need for a new pumping plant, the Sunnyside Pumping Plant, to increase pumping capacity, replace aging infrastructure, and provide water service to customers in the Valley View Pressure Zone.

In June 2011, to obtain a site for the Sunnyside Pumping Plant, EBMUD purchased an undeveloped 0.58-acre portion of the Leamys' 19-acre property in Lafayette in lieu of acquiring it through the power of eminent domain.

### B. EBMUD Representations During Negotiations

During negotiations for the sale of their property, the Leamys contacted Paul Kenny, an EBMUD real estate representative, to inquire about the potential noise that the Sunnyside Pumping Plant would produce after it was constructed and running. Kris Leamy asked Kenny about "potential sound

2

emitted" from the proposed Sunnyside Pumping Plant.  Kenny represented to her "that any sound emission from the pumping station would not be audible."

In January 2009, Robin Leamy e-mailed Kenny to ask if there was a nearby EBMUD pumping plant he and Kris could visit to determine the noise level, size, and visual impact of the proposed project.  Kenny suggested they visit the Holly Pumping Plant, noting it was operational so they "should be able to listen to it," and that they would be able to determine the noise of the future Sunnyside Pumping Plant by listening to the Holly Pumping Plant.

Plaintiffs visited the Holly Pumping Plant on Sunday, February 1.  The next day, Robin sent Kenny an e-mail stating, in relevant part:  "I did go by the Holly Pumping Station this past weekend.  Are there certain times those stations run?  I ask because on Super Bowl Sunday (right around 3:00 p.m.), I couldn't hear a thing (which is great).  I'm just wondering if these things are going continuously—or they kick in at certain intervals."

Kenny forwarded the e-mail to David Rehnstrom, an EBMUD engineer, asking him if the Holly Pumping Plant ran continuously.  Rehnstrom told Kenny that "on the maximum day demand (summer), the pumps may pump 16 hours and avoid the high energy use of noon to 6:00 pm," during "lower demand periods the pumps would operate less," and that "[e]ither way, the pumps should not pump 24 hours."

Kenny then arranged for an EBMUD engineer to visit the Holly Pumping Plant with the Leamys to ensure the pumps were running at the time of their visit.  Kenny called Robin to inform him he had arranged for the Leamys to visit the Holly Pumping Plant while it was running.

On February 4, 2009, Robin e-mailed Kenny that he would check with Kris " 'on timeframes to head to the Holly Pumping station with you during

3

daylight hours—I'll be back to you by tomorrow on this.' " The Leamys never followed up with Kenny to arrange a visit to a pumping plant when it was running. Satisfied with their prior visit, and in reliance on the lack of any audible noise from the Holly Pumping Plant, the Leamys completed the sale of their property to EBMUD in 2011.

## C. 2013 and 2014 Public Meetings

In July 2013, EBMUD employees met with the Leamys in the first "Leamy Realty Group" meeting. At the meeting, Kris commented that she had been told that there would be "no noise" at the Sunnyside Pumping Plant. An EBMUD representative responded that was not the case and EBMUD had "never stated such information." He indicated, however, that EBMUD had hired a sound architect to determine how best to mitigate pump noise.

EBMUD's sound architect conducted short-term and long-term ambient noise surveys on and around the property where the Sunnyside Pumping Plant would be built. Kris was informed of those surveys, permitted at least one noise meter to be located on their property, and requested that a measurement device be placed on EBMUD's southern property line. She also requested that sound testing occur after the Labor Day holiday weekend so that the measurement would be more representative of typical noise in the area. In an e-mail to Rehnstrom, Kris offered that "should the research find that there will be discernible noise beyond what EBMUD is willing to pay for as part of the mitigation process, [she] would like the opportunity to contribute to the mitigation efforts."

Later that fall, EBMUD distributed a document entitled "Sunnyside Pumping Plant Environmental Noise Assessment and Preliminary Design Recommendations," which provided substantial detail about its noise

4

mitigation plans. The report described the sound pressure levels of its equipment (transformers, pumps, and exhaust fans) as perceived at three feet away and discussed that the sound level would drop as the distance from the plant is doubled. The report stated that the operation of its transformer would result in sound levels of 31 dBA[1] at the closest property line, while levels at more distant property lines would be lower. The report stated that 30 dBA was equivalent to the amount of sound emitted by a library. The operation of the exhaust fan would result in sound levels of 31 to 32 dBA at the closest property line. For the pumps, the report found that the "worst case operational noise level" at the closest property line would be 47 dBA, which would exceed the City of Lafayette's noise ordinance. The report recommended sound mitigation strategies to reduce the noise emissions from pump operations. With the acoustical treatments recommended, and in the "worst case" scenario where three pumps were operating, the sound level would be 35 dBA at the closest property line; with a single pump operating it would be 31 dBA.

EBMUD also conducted multiple public meetings, known as "Citizens Liaison Committee" (CLC) meetings, with the Leamys and other community members in 2013 and 2014. At the first CLC meeting in December 2013, EBMUD's noise architect, Fred Svinth, presented the results of the ambient noise investigation and elaborated on the investigation conducted at and near the Sunnyside Pumping Plant location, including on plaintiffs' property. Plaintiffs attended that meeting. Svinth told participants that without

---

[1] "A decibel (dB) is a unit that describes the amplitude of sound and is expressed on a logarithmic scale. A common metric is the overall A-weighted sound level measurement (dBA), which measures sound in a fashion similar to the way a person perceives or hears sound." (*King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 885, fn. 36.)

mitigation measures, the noise levels produced by three operating pumps at the nearest property line could exceed 40 dBA.  Svinth indicated with his recommended " 'acoustical louvers in place' " and three pumps running, the noise levels at the near property line would be 35 dBA and 32 dBA at the façade of the closest neighbor's house.

Plaintiffs also attended subsequent CLC meetings in March and June 2014, at which EBMUD discussed the projected noise impacts of the project and the findings from the December 2013 CLC meeting.  Kris considered "[a]ll examples provided to us and neighbors" by EBMUD to represent "effectively inaudible sound emission."

### D.  Visit to Las Aromas Pumping Plant

In 2019, plaintiffs' neighbor, Holly Bender, e-mailed Rehnstrom and asked him about a pumping plant that would "give me a similar idea of what our station will sound like."  Rehnstrom recommended visiting the Las Aromas Pumping Plant, a "newer pumping plant with modern noise control measures" located in Orinda.

Bender, Kris, and Rehnstrom visited the Las Aromas Pumping Plant. Bender was "alarmed at the loud and uncomfortable noise" they all heard. Kris was "shocked by the level and sound of noise."  In her declaration, Kris stated that if she and Robin had known there was "even a remote possibility" that the Sunnyside Pumping Plant would emit the same level of noise, they never would have sold their land to EBMUD.  The parties did not dispute that the sound emitted by the Las Aromas Pumping Plant visited by Kris in 2019 did not reflect the level of noise that will emanate from the Sunnyside Pumping Plant.

### E. Rehnstrom's Deposition

At his deposition, Rehnstrom stated that after he visited the Las Aromas Pumping Plant with Bender and Kris, he found out there was some faulty noise construction at that plant. He also stated if power were shut off to the plant, EBMUD would need to bring in a portable generator. Rehnstrom also testified that until the Sunnyside Pumping Plant is built and running, there is no way to tell with certainty how loud it will be during operation. He could not say whether there would be no audible noise at the Sunnyside Pumping Plant.

### F. Summary Judgment Proceedings

The Leamys filed their complaint in April 2021, and the first amended complaint, the operative pleading, two months later.

The parties filed cross-motions for summary judgment. EBMUD asserted that all of plaintiffs' claims must fail because they were barred by the applicable statutes of limitations and laches, plaintiffs could not establish the elements of their various causes of action, and EBMUD was immune from liability on their common law claims. In their opposition to EBMUD's motion, plaintiffs argued that EBMUD's motion must be denied because (1) EBMUD failed to disclose the Holly Pumping Plant was not operating when Robin visited in 2009, and (2) EBMUD concealed from plaintiffs that there was no way to tell with any certainty what level of sound the plant will emit once built.[2]

The trial court granted EBMUD's motion for summary judgment and denied plaintiffs' motion. The court ruled EBMUD had demonstrated all of plaintiffs' claims were barred by the applicable statutes of limitations,

---

[2] Plaintiffs argued that the "statute of limitations did not start to accrue until the deposition of Mr. Rehnstrom in this litigation."

because even assuming EBMUD's statements in 2009 constituted misrepresentations or material omissions, plaintiffs were on inquiry notice this was not the case by 2013 and 2014.  Further, plaintiffs failed to present evidence raising a triable issue of fact that EBMUD made any actionable misrepresentations of past or existing material facts about the pumping plant that had yet to be built.

Plaintiffs filed a motion for new trial, which the trial court denied.[3]

## II.  DISCUSSION

### A.  *Standard of Review*

On appeal from a summary judgment, we independently review the record before the trial court to determine whether there is any triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (c); *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)  When, as in this case, the defendant moves for summary judgment, the defendant bears the initial burden to show that the plaintiff cannot establish an essential element of the claim or that the defendant has a complete defense to the claim.  (Code Civ. Proc., § 437c, subds. (a), (*o*), (p)(2); *Saelzler*, at p. 768; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850.)  Once the defendant has met this burden, the burden shifts to the plaintiff to "set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)  Resolution of the statute of limitations is normally a question of fact, but "where the uncontradicted facts established through discovery are susceptible of only one

---

[3] Plaintiffs do not challenge the denial of the new trial motion on appeal.

legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

## B. *Statute of Limitations*

Plaintiffs contend the trial court erred in ruling their claims were barred by the applicable statutes of limitations. We disagree.

In the operative complaint, plaintiffs asserted eight causes of action for (1) rescission, (2) declaratory relief, (3) cancellation of instrument, (4) breach of contract, (5) concealment, (6) intentional misrepresentation, (7) negligent misrepresentation, and (8) fraud. A three-year statute of limitations governs an action for relief on the ground of fraud or mistake. (Code Civ. Proc., § 338, subd. (d).) A four-year statute of limitations generally applies to breach of contract claims, but where a contractual claim is based on a failure to disclose material facts, a three-year statute of limitations applies. (See *Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 65–66.) "A claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based." (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943.)

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 (*Fox*).) As our Supreme Court explained in *Fox*, "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put

9

[them] *on inquiry*' " 'or if they have ' " '*the opportunity to obtain knowledge from sources open to [their] investigation.*' " ' [Citation.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at pp. 807–808, fn. omitted.)

For purposes of summary judgment, we look to the allegations of the operative complaint to understand the claims at issue. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 (*Jacobs*) [" 'scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings' "].) All of plaintiffs' claims are based on the same set of allegations that they sold their land to EBMUD in reliance on Kenny's representation in 2009 that "sound emission from the pumping station would not be audible," and would be similar to the level of noise emitted by the Holly Pumping Plant, which unbeknownst to plaintiffs, they visited when it was not operating.

In support of its motion for summary judgment, EBMUD presented ample evidence that plaintiffs should have suspected by 2014, at the latest, that audible noise would be emitted by the Sunnyside Pumping Plant when it was operating.

In 2009, Robin visited the Holly Pumping Plant at 3:00 p.m. during the Super Bowl and heard no noise coming from the plant. He e-mailed Kenny the next day to ask whether there are certain times the station runs because he "couldn't hear a thing." Kenny did not respond to that e-mail, but called Robin to tell him he had arranged a visit for the Leamys to the Holly Pumping Plant when EBMUD "could ensure it was running." Although Robin initially told Kenny he would get back to him about times they could

10

visit, he never followed up to arrange a visit. These undisputed facts show that as early as 2009, Robin questioned whether the Holly Pumping Plant was operational during his unplanned visit at which he heard "couldn't hear a thing."

By 2013 and 2014, plaintiffs were on notice that Kenny's representation that there would be no audible sound from the Sunnyside Pumping Plant was not true. At the July 30, 2013 Leamy Realty Group meeting, Kris commented that she was told there would be "no noise" from the plant and was told by an EBMUD employee that EBMUD had never stated such information. EBMUD's statement directly denying it had made such a representation put plaintiffs on notice of a factual basis for their claims. In addition, at that meeting, EBMUD explained that it had hired a sound architect to conduct studies to determine how best to *mitigate* pump noise, again putting plaintiffs on notice that they should investigate how loud the noise produced by an operational plant would be. Sound was also a topic at the CLC meetings for the Sunnyside Pumping Plant where the anticipated sound of the plant was discussed over the course of several meetings. Those discussions, including the presentation of Fred Svinth's noise analysis, which indicated specific decibel levels that could be expected from the equipment at the plant and efforts EBMUD would make to mitigate excessive noise, put plaintiffs on notice the Sunnyside Pumping Plant would emit audible noise once built.

Finally, plaintiffs' own correspondence with EBMUD shows they were on notice the plant would produce audible noise. In August and September 2013, they made multiple requests regarding sound testing, including that EBMUD wait until after the holiday weekend and place a measurement device along EBMUD's southern property line so it would reflect ambient

11

noise closer to plaintiffs' planned home location. And in September 2013, Kris wrote to EBMUD and offered to help with noise mitigation costs if they were beyond what EBMUD was willing to pay. As the trial court observed, plaintiffs "must have known there would be sound generated by the Plant as they offered to pay for additional sound mitigation if necessary." (See *Fox, supra,* 35 Cal.4th at p. 807 ["A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'"]; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [when a plaintiff becomes "aware of facts which would make a reasonably prudent person suspicious" that a wrong has occurred, the plaintiff has "a duty to investigate further, and [is] charged with knowledge of matters which would have been revealed by such an investigation"].)

Plaintiffs contend the statute of limitations did *not* begin to run as early as 2013 or 2014, both because they did not have reason to suspect a wrongful injury and because a reasonable investigation by them at that time would not have revealed the factual basis for their cause of action. They argue the trial court wrongly focused on the difference between the representation of no audible noise in 2009, and the public conversations in 2013 and 2014, about the levels of noise the plant would produce. Rather, they assert, the "salient divergences" for purposes of their claims are between the 2013 promise in Svinth's noise assessment that the sound would resemble a library and the much louder sound observed at the Las Aromas Pumping Plant in 2019, and the 2013 description of 31 dBA and Rehnstrom's 2022 admission that EBMUD could not really tell how loud the plant would be until it was up and running.

As explained above, however, all of plaintiffs' claims are based on statements EBMUD made in 2009 that the plant would produce no audible

noise, which induced them to sell their property in 2011. By 2013, they were aware that was not true. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that [their] injury was caused by wrongdoing, that someone has done something wrong to [them]. . . . "[T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry . . . .' " '* [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [they] must decide whether to file suit or sit on [their] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [they] cannot wait for the facts to find [them]." (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at pp. 1110–1111, fn. omitted.) Here, the undisputed facts show plaintiffs were on notice in 2013 that the alleged representation that the plant would be inaudible was untrue, both because EBMUD denied that representation, and because it held extensive discussions with plaintiffs and other community members about the level of noise that would be generated by the plant and EBMUD's planned efforts at mitigation.

Nor did plaintiffs present any evidence raising a triable issue of fact as to a later discovery date. Although they argue that they did not discover the level of noise that might be emitted by the Sunnyside Pumping Plant until their visit to the Las Aromas Pumping Plant in 2019, they concede that the sound emitted by the Las Aromas plant does not reflect the level of noise that will emanate from the Sunnyside Pumping Plant. Nor did plaintiffs present any evidence to suggest the Sunnyside plant will have faulty noise construction like the Las Aromas plant did.

13

We also find unpersuasive plaintiffs' claim that an investigation in 2013 or 2014 would not have revealed a basis for their claim because Rehnstrom testified at his deposition in 2022 that there is no way to know for certain how much sound the Sunnyside Pumping Plant will emit until it is actually built. First, as EBMUD points out, plaintiffs did not identify Rehnstrom's testimony as a basis for delayed discovery in their complaint. In any event, even if they had, his statements that there is no way to know the precise level of sound that will be emitted once the plant is built does not change the fact that plaintiffs were on inquiry notice by 2014 that they should investigate EBMUD's representation of no audible noise.[4]

Finally, plaintiffs' reliance on *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 38–39, in support of their delayed discovery argument is unpersuasive. *Shaffer* concerned equitable estoppel, not delayed discovery. In *Shaffer*, the defendants were equitably estopped from asserting a statute of limitations defense as to the plaintiffs' emotional distress claims because their promises to make necessary repairs induced the plaintiffs not to file their lawsuit. (*Id.* at pp. 43–44.) Here, by contrast, the Leamys assert they did not know of, and could not have discovered, their injury. They did not plead equitable estoppel, allege facts to support it, or argue that theory in their opposition to summary judgment below. We will not reverse the judgment on that basis now. (See *Jacobs*, *supra*, 14 Cal.App.5th at p. 444 [scope of issues on summary judgment are limited to claims framed by the pleadings]; *May v.*

---

[4] Similarly, plaintiffs failed to raise a triable issue of fact because EBMUD did not disclose in its 2013 noise assessment that a portable generator may be required if the power to the plant is cut. Plaintiffs' operative complaint did not include any allegations regarding omissions related to portable generators, and EBMUD submitted evidence the need for portable equipment arises during public safety power shut-off events that did not exist at the time EBMUD purchased plaintiffs' property.

14

*City of Milpitas* (2013) 217 Cal.App.4th 1307, 1337 [" ' "Estoppel must be pleaded and proved as an affirmative bar to a defense of statute of limitations." ' "]; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698–700 [forfeiture rule applies to appellate review of summary judgment].)

### C. *Actionable Misrepresentation*

The trial court also ruled that EBMUD was entitled to summary judgment because the representations on which plaintiffs' claims were based were nonactionable opinions about a future event.

"It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43–44; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 [" '[P]redictions as to future events . . . are deemed opinions, and not actionable fraud.' "])

Plaintiffs contend the trial court erred in concluding their claims were based on mere expressions of opinion about future events, because EBMUD had special expertise and its 2013 environmental noise assessment report offered not just opinions but actionable misrepresentations about noise levels of the Sunnyside Pumping Plant. Plaintiffs' claims, however, are not based on statements made by EBMUD in the 2013 noise assessment report, but their reliance on EBMUD's alleged assurances when they sold their land about a lack of audible noise from the future plant. The representations

made in 2013 were made *after* plaintiffs sold their property in 2011, and therefore could not have induced them to sell.[5]

Moreover, even if plaintiffs had alleged the representations by EBMUD in 2013 and 2014 were misrepresentations, they did not present any evidence raising a triable issue of fact that the pumping plant will operate outside those projected sound levels. Plaintiffs did not dispute that the Las Aromas Pumping Plant they visited in 2019 had some faulty noise construction and does not represent the sound level the Sunnyside Pumping Plant will produce once built. Moreover, EBMUD introduced evidence regarding the building plans for the Sunnyside Pumping Plant and intended noise mitigation measures, and plaintiffs did not dispute the plant would be constructed consistent with those specifications. The assertion by plaintiffs that the plant, once constructed, will produce sound exceeding the levels described in the 2013 report is purely speculative.

Plaintiffs' reliance on *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 892 and *Daniels v. Oldenburg* (1950) 100 Cal.App.2d 724, 727, is unpersuasive. In *Jolley*, a bank loan officer assured the plaintiff homeowner that his loan modification application would " 'likely' " be approved, but the bank instead demanded payment in full. (*Jolley*, at pp. 881, 893.) In *Oldenburg*, the defendants leased a motel to the plaintiffs

---

[5] Plaintiffs argue in their briefs that the trial court improperly relied on *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469–1471, because unlike the statements made about uncertain future financial markets in *Cansino*, the statements made by EBMUD in its 2013 noise assessment were based on its experience and expertise on which plaintiffs had a right to rely. While *Cansino* might be factually distinguishable, had plaintiffs raised different claims in this lawsuit, the scope of our review is limited by plaintiffs' claims as alleged in the operative pleading. (*Jacobs*, *supra*, 14 Cal.App.5th at p. 444.)

by representing they could keep it rented all the time, but the plaintiffs sued for rescission when they were unable to rent the rooms. (*Oldenburg*, at pp. 725–729.) Here, as the trial court noted, the Leamys' allegations that the " 'currently planned location of the [Sunnyside Pumping Plant] on the purchased property, when combined with the ***very likely*** audible noise of an actual operating pumping plant ***will constitute*** a nuisance to the Leamy[s'] remaining property including their own home,' " is mere speculation.[6]

In sum, we conclude the trial court properly granted EBMUD's motion for summary judgment because the record shows there was no triable issue of material fact regarding any of plaintiffs' claims and EBMUD was entitled to judgment as a matter of law.

### III. DISPOSITION

The judgment is affirmed. EBMUD is to recover its costs on appeal.

---

[6] Nor does Rehnstrom's statement in his deposition that he cannot say with certainty exactly what level of sound the plant will emit *once built* contradict the sound architect's projections in 2013 and 2014, a decade before the plant was constructed, about the anticipated noise levels based on the surveys he had performed. As the trial court observed, "There is no evidence that EBMUD made any affirmative statements that it could determine the precise amount of sound that would definitely be produced by the Plant. It was clear that all of the discussions were projections and scientific estimates based on the surveys and related analysis of the environment and plans for the Plant."

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A167275
*Leamy v. East Bay Municipal Utility District*

18